IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

     **v.**                                     **Crim. No. PX-19-039**

JEAN BUTEAU REMARQUE

\*     \*     \*     \*     \*

## OPINION AND ORDER

Jean Buteau Remarque has appealed the decision to detain him pending trial and separately moves for release under 18 U.S.C. § 3142(i). The Court has considered the record below and the parties' submissions and has independently obtained Remarque's medical records for review. The Court finds a hearing unnecessary. *See* Loc. R. 105.6. For the following reasons, the decision of the Magistrate Judge is affirmed and relief pursuant to 18 U.S.C § 3142(i) is denied.

### I.    Procedural History

The Government initially charged Remarque with one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 1. The charges stem from 334 images found on electronic devices seized and searched in connection with Remarque's then-spouse finding disturbing text messages between Remarque and a fifteen-year-old girl. ECF Nos. 55 & 71 at 21–29. Although the teenager was not also the subject of the images, her communication with Remarque reflected his romantic and sexual interest in this minor. ECF No. 69-1 & 71 at 21–29.

On February 1, 2019, Magistrate Judge Timothy Sullivan detained Remarque after a

hearing, finding that the Government demonstrated that no combination of conditions could reasonably assure Remarque's appearance at future court proceedings. ECF Nos. 12 & 13. Remarque thereafter renewed his release motion, which Judge Sullivan after a second hearing also denied. ECF Nos. 50, 53, 54.

The Government next returned two superseding indictments, charging Remarque with two counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and a single count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(b). ECF Nos. 47 & 65. Relevant to this motion, the receipt charges carry a five-year mandatory minimum term of imprisonment upon conviction and trigger a rebuttable presumption in favor of detention pending trial. Remarque's jury trial was scheduled to begin on March 30, 2020 but was postponed pursuant to the Court's Standing Orders limiting operations in in-person proceedings as a result of the COVID-19 pandemic.

On March 30, 2020, Remarque again urged Judge Sullivan to release him based on new evidence, namely that continued confinement at the D.C. Jail poses grave risk to his health and safety in light of the COVID-19 pandemic. ECF No. 86. Magistrate Judge Sullivan construed the motion as one brought based on new evidence relevant to the question of release. ECF No. 90; 18 U.S.C. § 3142(g). Judge Sullivan nonetheless concluded that no combination of conditions could be fashioned to address Remarque's risk of flight, emphasizing that (1) the evidence against Remarque is strong and the charges serious; (2) Remarque lacks stable employment and living arrangements; and that (3) he has significant international ties and questionable immigration status. ECF No. 90.

Judge Sullivan next specifically addressed the relevance of COVID-19 to Remarque's motion. At the time, Remarque had not submitted any specific evidence about his medical

history or present condition, nor did he proffer a specific plan for release. Accordingly, the Court ultimately determined that, on balance, the new evidence did not alter the Court's original determination. ECF No. 90.

Remarque has now appealed the Magistrate Judge's decision. ECF No. 92. He has also separately urged that this Court consider releasing him pursuant to 18 U.S.C. § 3142(i). The Court addresses each ground for relief below.

## II.     New Evidence in Connection with this Motion

As Remarque rightfully highlights, the COVID-19 pandemic presents unique and serious challenges to the D.C. Jail on a daily, if not hourly, basis. Relevant to Remarque, the Court ordered the production of Remarque's medical records from the D.C. Jail in an effort to ascertain his individual welfare in light of the pandemic. ECF No. 95. The Court received such records, docketed them under seal (ECF No. 98), and produced them to counsel. The Court also invited supplemental responses to the new medical information, which were received the same day. ECF Nos. 97 & 99.

The medical records reflect that Remarque has, regrettably, been diagnosed with latent tuberculosis and COVID-19 while at the D.C. Jail, but appears to have received adequate treatment for both. ECF No. 98 at 32. As for COVID-19, Remarque tested positive on April 8, 2020 after experiencing mild symptoms while in quarantine. *Id.* at 25. He was released from medical isolation on April 15, 2020. *Id.* at 5. During his days in medical isolation, Remarque had some discomfort and no fever throughout. *Id.* at 5–28. On April 14th, Remarque reported experiencing no symptoms except loss of smell. *Id.* at 8. Remarque has since been seen by medical staff for follow-up assessments and reported "feeling well overall," denying cough, fever, chills, body aches or gastro-intestinal discomfort. *Id.* at 5.

Also related to the COVID pandemic, the United States District Court for the District of Columbia recently granted partial injunctive relief in *Banks v. Booth*, No. 20-849-CKK (D.D.C. Apr. 19, 2020), regarding the D.C. Jail's inadequate response to the virus. The *Banks* Court more specifically determined that, based on the evidence before it, Plaintiffs were likely to prevail in showing that the D.C. Jail recklessly failed to provide adequate health and safety measures to combat the spread of COVID-19. *See* Mem. Op. Mot. TRO at 22, *Banks v. Booth*, No. 20-849-CKK (D.D.C. Apr. 19, 2020). The Court recognized that the Jail has made some inroads in responding to the COVID-19 outbreak regarding improved hygiene, sanitation, and protective equipment. *Id.* at 27–31. The Court stopped short, however, of finding that the conditions were so severe that release or transfer of the detainees was warranted. *Id.* at 31 (finding "immediate release" of detainees "inappropriate at this time on the current factual record").

As to his release plan, Remarque proffers Hermoine Toussaint as a third-party custodian. Charitably put, Toussaint's role in Remarque's life is not clear. ECF No. 92 at 2–3. At Remarque's initial detention hearing, Toussaint was introduced to the Court as Remarque's "landlord" from whom he had rented a basement room. ECF No. 55 at 4, 10–11, 18. Remarque had further proffered he recently moved to Toussaint's residence in Silver Spring. *Id.* at 18. Remarque was married at that time, but his wife has since divorced him. ECF No. 92.

Now Toussaint holds herself out as Remarque's fiancé. Toussaint has also admitted to having kept the true nature of her relationship with Remarque from the Pretrial Services Office, citing a reluctance to discuss the couple's status while Remarque was still married to his ex-wife. More troubling, however, is that Toussaint gave inconsistent information to Pretrial regarding the presence of a computer with internet capabilities in the home and whether her

other tenants work outside the home.  *See* Pretrial Services Addendum (Apr. 24, 2020).

Accordingly, Pretrial Services did not find Toussaint to be a suitable third-party custodian.

### A.      Review of Previous Detention Order

Pursuant to 18 U.S.C. § 3145(b), a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion shall be determined promptly."  *Id.* § 3145(b); *see United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).  The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release."  *Stewart*, 19 F. App'x at 48; s*ee also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).  Remarque has been charged with receipt of child pornography, triggering a rebuttable presumption "that no condition or combination of conditions will reasonably assure" the person's appearance and the safety of the community.  18 U.S.C. § 3142(e)(2).  Thus, in this circumstance, the burden of production shifts to the defendant to come forward with evidence to counter the presumption.  *See United States v. Stone*, 607 F.3d 939, 945-46 (6th Cir. 2010).

Notably, Judge Sullivan had initially reviewed the propriety of release as a non-presumption case in which the Government bears the burden of demonstrating that no combination of conditions could reasonably assure Remarque's appearance in court.  Under this standard undoubtedly more favorable to Remarque, Judge Sullivan detained him not once, but three times on risk of flight grounds.  ECF Nos. 13, 54, 90.

Considering all evidence and argument before it, the Court agrees with Judge Sullivan that even under the more favorable non-presumption standard, no condition or combination of conditions would reasonably mitigate Remarque's serious risk of flight.  Remarque's tenuous immigration status, significant family ties in Haiti, spotty employment record, insufficient release

plan, and likelihood that he will serve a lengthy sentence based on the strength of the evidence against him, support detention as the only viable option to reasonably assure his appearance in Court.

Remarque understandably presses that the COVID-19 pandemic has presented significant health and safety risks at his place of confinement that, according to the D.C. District Court's preliminary determination, may rise to the level of a due process violation.  ECF No. 97.  Thus, says Remarque, he should be released on conditions to mitigate the risk presented to him.  *Id.*  The Court disagrees with Remarque for several reasons.

First, although the D.C. District Court indeed found at this stage a likelihood that the *Banks* plaintiffs may establish Eighth and Fifth Amendment violations at D.C. Jail, that court also addressed the present harms through injunctive relief which does *not* include release or transfer of the detainees.  Even if this Court were to accord the D.C. decision the weight that Remarque urges, so too would it credit that release is simply not compelled as a result.

Second, and specifically as to Remarque, he has already tested positive for COVID-19 and has recovered.  ECF No. 98 at 1–14.  His symptoms were mild, and he no longer is quarantined.  Undoubtedly, Remarque can count himself among the more fortunate of COVID-19 patients.[1]  Remarque otherwise appears to receive adequate medical care for his other ailments and presents as stable and healthy.  ECF No. 98.  Going forward, D.C. Jail will be subject to the watchful eye of the D.C. District Court and must comply with a detailed injunctive relief order to address identified deficiencies.  Ultimately, therefore, Remarque's physical condition and continued confinement at the D.C. Jail does not counsel in favor of release when stacked against the otherwise powerful evidence compelling detention.

Finally, this decision in no way minimizes the unprecedented threat that COVID-19 has

---

[1] The Court recognizes that individuals who have tested positive are not necessarily immune from reinfection.  *See, e.g.*, Stacey McKenna, *What Immunity to COVID-19 Really Means,* Scientific American (Apr. 10, 2020), https://www.scientificamerican.com/article/what-immunity-to-covid-19-really-means/.

befallen on our community, country, and world, including places of confinement.  For some individuals, the virus visits profound suffering, illness, and even death.[2]  This cold reality, however, does not permit the Court to cast the Bail Reform Act aside, but rather to follow it with special care to the individualized circumstances presented.  When doing so here, the balance simply does not tilt in favor of Remarque's release.

For these reasons, and after careful review of all evidence presented, the decision of the Magistrate Judge is affirmed.

### B.  Temporary Release pursuant to 18 U.S.C. § 3142(i)

Liberally construing Remarque's most recent pleading (ECF No. 97), he also seeks temporary release pursuant to Section 3142(i) of the Bail Reform Act.  The provision states in relevant part that a court may "permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or *for another compelling reason*."  18 U.S.C. § 3142(i) (emphasis added).  Remarque bears the burden of establishing circumstances warranting temporary release under this provision.  *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).  Although defendants have customarily invoked this provision to aid in preparing for trial, *see, e.g., id.*, no obvious impediment exists to considering the particular effect of the COVID-19 pandemic on a given detainee's ability to prepare an adequate defense.  *See, e.g.*, *United States v. Stephens*, No. 15-cr-95, WL 1295155 (S.D.N.Y. Mar. 19, 2020).  Even if this Court were to construe "other compelling reason" more broadly, to include the effect of COVID-19 on a particular defendant, the Court can say with confidence that Remarque has not shown that his experience with a mild, largely

---

[2] *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 24, 2020).

asymptomatic case of COVID-19 at the D.C. Jail provides sufficiently "compelling" grounds to justify release.   The motion is, therefore, DENIED.


<u>April 27, 2020</u>                                                   _____/s/_____
Date                                                                      Paula Xinis
                                                                          United States District Judge