**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 22, 2020

LETTER TO COUNSEL

      RE:    USA v. Jean Buteau Remarque; Criminal Case No. SAG-19-0039

Dear Counsel:

      I have reviewed Mr. Remarque's Motion to Dismiss the Indictment for Prosecutorial Vindictiveness, ECF 135, the Government's Opposition, ECF 146, and Mr. Remarque's reply, ECF 150. No hearing is necessary. For the reasons stated below, the motion will be DENIED.

      A review of this case's procedural history informs the resolution of this motion. Mr. Remarque's initial appearance in federal court, on a one-count indictment charging possession of child pornography, occurred on January 30, 2019. ECF 6. The federal public defender's office entered its appearance on Mr. Remarque's behalf, ECF 14, and quickly filed two suppression motions on February 12, 2019. ECF 16, 17. According to Mr. Remarque's own timeline, "Before the Court held a hearing to dispose of the motions to suppress and pretrial conference scheduled for March 5, 2019, the Assistant Public Defender brought a plea agreement to Defendant."[1] ECF 135 at 3. The docket reflects that the former presiding judge, United States District Judge Paula Xinis, held a hearing on March 20, 2019 and referred the case to a magistrate judge for an attorney inquiry. ECF 19, 20. Following that hearing, an attorney from this Court's CJA panel, Michael D. Montemarano, entered his appearance on March 25, 2019. ECF 22. However, just a few weeks later on April 8, 2019, private retained counsel, Seth Russell Okin, replaced Mr. Montemarano as counsel for Mr. Remarque. ECF 27. Mr. Okin quickly filed a motion for discovery, ECF 28, which Judge Xinis denied, ECF 30.

      A series of status conference calls ensued. However, on June 14, 2019, Mr. Remarque docketed a letter in which he represented that he had "not heard from Attorney Seth Okin Esq. since April 8, 2019," the date he had entered his appearance. ECF 33. Mr. Okin subsequently filed a motion to withdraw as counsel. ECF 36. Judge Xinis referred the case for another attorney inquiry hearing, after which Mr. Okin's appearance was terminated. ECF 41. Mr. Montemarano again became counsel of record, and requested sixty days to provide a status report to the Court. ECF 42. Judge Xinis held a telephone conference on September 25, 2019, and she subsequently entered a pretrial scheduling order for the first time. ECF 46. The scheduling order set, *inter alia*,

---

[1] Mr. Remarque's understanding of the case's posture appears flawed, as Judge Xinis had scheduled an initial conference call for March 5, 2019, not a motions hearing or a pretrial conference. ECF 18.

*USA v. Jean Buteau Remarque*
Criminal Case No. SAG-19-0039
October 16, 2020
**2** | P a g e

a December 2, 2019 deadline for Mr. Remarque to file or supplement pretrial motions, a motions hearing date of January 3, 2020, and a trial date of March 25, 2020.[2]  ECF 46.

A little over two weeks later, on October 9, 2019, the Government filed a Superseding Indictment, adding two counts of receipt of child pornography to the initial charge of possession of child pornography.  ECF 47.  On or before the December 2, 2019 deadline, Mr. Montemarano filed six additional pretrial motions.  ECF 56, 57, 59, 60, 61, 64.  Relevant to the instant motion, one of the six new motions was a December 2, 2019 Motion to Dismiss Count Two of the superseding indictment.  ECF 64.  The motion to dismiss argued that the superseding indictment was multiplicitous, in that Count Two charged receipt of child pornography that had been downloaded in a single online session with the child pornography alleged in Count One.[3]  ECF 64.

Sixteen days later, on December 18, 2019, the Government filed a Second Superseding Indictment, which again included three charges.  ECF 65.  This time, however, Count One alleged receipt of child pornography on November 16, 2017, and Count Two alleged receipt of Child pornography on November 22, 2017.  *Id.*  According to Mr. Remarque's timeline, the Government "offered the same initial deal on January 16, 2020 in advance of the scheduling hearing of February 4, 2020; as the deadline to accept the plea bargain was the day prior to the hearing to dispose on [sic] the motion to suppress."  ECF 150 at 3.  The motions hearing occurred on February 4, 2020, at which Judge Xinis denied Mr. Remarque's pretrial motions.  ECF 74, 75.

In his instant motion, Mr. Remarque alleges that the Government's decision to supersede the original indictment to add the more serious receipt charges constituted prosecutorial vindictiveness and violated his Due Process rights.  ECF 135.  The law does not permit a prosecutor to behave in a vindictive manner or to punish a defendant for exercising his constitutional or legal rights.  *United States v. Goodwin,* 457 U.S. 368 (1982).  The Fourth Circuit has delineated the high bar to establish prosecutorial vindictiveness in a pretrial context:

> To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus.  *See*

---

[2] This Court notes that the instant motion should have been filed by the December 2, 2019 deadline set by Judge Xinis.  At the very least, it should have been filed prior to the February 4, 2020 hearing on pretrial motions, since the Second Superseding Indictment had been filed in mid-December.  Instead, it was not filed until many months later, on October 1, 2020.  ECF 135.  Mr. Remarque's present counsel entered his appearance on June 13, 2020.  ECF 102.  While the record reflects that he asked Judge Xinis on August 5, 2020 for the opportunity to "re-submit a motion to suppress statements and evidence," ECF 111, there is no evidence that he requested the opportunity to file additional belated pretrial motions.

[3] Count One of the Superseding Indictment alleged receipt on November 22, 2017, at approximately 2:29 p.m.  Count Two alleged receipt on November 22, 2017, at approximately 2:35 p.m.  ECF 47.

> *Goodwin*, 457 U.S. at 380 n. 12, 102 S. Ct. 2485 (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000).
>
> If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed. To invoke such a presumption, a defendant must show that the circumstances "pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27, 94 S. Ct. 2098. By recognizing the possibility of creating a presumption that shifts the burden to the government to justify its conduct, not only is vindictive prosecution deterred, but also defendants are "freed of [the] apprehension of such a retaliatory motivation." *Goodwin*, 457 U.S. at 376, 102 S. Ct. 2485. But such a presumption is warranted only when circumstances warrant it for all cases of the type presented. *See id.* at 381, 102 S. Ct. 2485. Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions. *See id.* Because of the broad discretion given prosecutors and the wide range of factors that may properly be considered in making pretrial prosecutorial decisions, "a prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* at 382, 102 S. Ct. 2485. "Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than a pretrial decision." Id. at 381, 102 S. Ct. 2485 (emphasis added). When a presumption of vindictiveness is warranted, the burden shifts to the government to present objective evidence justifying its conduct. *See id.* at 374, 376 n. 8, 102 S. Ct. 2485.
>
> Although prosecutorial decisions must not be made in retaliation against defendants for exercising their legal rights, courts must nonetheless be cautious not to intrude unduly in the broad discretion given to prosecutors in making charging decisions. Indeed, a prosecutor's charging decision is presumptively lawful. *See United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L.Ed.2d 687 (1996).

*United States v. Wilson*, 262 F.3d 305, 314-15 (4th Cir. 2001).

As a general matter, courts have not found a presumption of prosecutorial vindictiveness to exist when a defendant is indicted for more serious charges after requesting a jury trial on less serious charges. For example, in *Goodwin*, the Supreme Court considered a case in which "[a]fter the respondent requested a trial by jury on pending misdemeanor charges, he was indicted and convicted on a felony charge." 457 U.S. at 370. The Court noted that:

> An initial indictment – from which the prosecutor embarks on a course of plea negotiation – does not necessarily define the extent of the legitimate interest in

> prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of a trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Id.* at 379-80. The *Goodwin* Court explained that the case did not involve actual vindictiveness, because "the prosecutor never suggested that the charge was brought to influence the respondent's conduct." *Id.* Thus, the Court proceeded to assess whether a presumption of vindictiveness had arisen. The Court noted, "Defense counsel routinely file pretrial motions to suppress evidence, to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by a jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and deter." *Id.* at 381. Even under the facts in *Goodwin,* where the defendant's request for a jury trial placed a greater burden on the prosecutor than the misdemeanor bench trial the prosecutor had anticipated, the Court found, "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *Id.* at 384.

The Fourth Circuit considered the issue of vindictive prosecution, in a pretrial context, in *United States v. Williams,* 47 F.3d 658 (4th Cir. 1995). In *Williams*, the state prosecutor of a defendant facing drug distribution charges warned the defendant that he would refer the case for federal prosecution, unless the defendant pled guilty to two state charges and agreed to cooperate with authorities. *Id.* at 659-60. The federal charges included a much more significant mandatory minimum penalty. *Id.* Because the defendant declined to cooperate, the federal grand jury indicted him. *Id.* The state prosecutor, who had been cross-designated as a Special Assistant United States Attorney, presented the case to the federal grand jury. *Id.* The federal district court dismissed the federal indictment, citing prosecutorial vindictiveness, and the Government appealed to the Fourth Circuit.

The Fourth Circuit reversed the district court, reasoning:

> The main purpose of plea bargaining is to encourage a criminal defendant to plead guilty and give up his right to trial by offering a more lenient sentence if he pleads guilty or threatening harsher punishment if he refuses to plead guilty. A criminal justice system that tolerates and encourages plea negotiations must allow prosecutors to impose difficult choices on defendants even though the risk of more severe punishment may discourage a defendant from asserting his trial rights. *Id.* at 364, 98 S.Ct. at 668. If a prosecutor brings additional charges after a defendant refuses to accept a plea bargain, a court cannot presume that the additional charges are an impermissible penalty for the defendant's refusal. *United States v. Goodwin*, 457 U.S. 368, 378-79, 102 S. Ct. 2485, 2491-92, 73 L.Ed.2d 74 (1982) (explaining *Bordenkircher*).

*USA v. Jean Buteau Remarque*
Criminal Case No. SAG-19-0039
October 16, 2020
**5 |** P a g e

*Id.* at 661. The *Williams* Court explained that the federal narcotics charges against the defendant were appropriate and could have been brought in the first instance, and so the decision to bring "more lenient initial charges and threaten to bring more severe charges if the defendant refuses to cooperate" was no different than a decision to "initially bring more severe charges and negotiate down to more lenient charges if the defendant cooperates." *Id.* at 663-664. The Court concluded by noting that "a defendant does not have a right to hold the prosecutor to the original level of prosecution represented in the initial charges. Prosecutors are free to reexamine the appropriate level of prosecution before trial, and there is no presumption of vindictiveness if a prosecutor decides that the defendant's uncooperativeness warrants more severe charges." *Id.* at 665.

Under those standards, Mr. Remarque has not come close to undermining the presumption of regularity in this case. *See Wilson*, 262 F.3d at 315 ("Indeed, a prosecutor's charging decision is presumptively lawful."). In order to even obtain discovery relating to the basis for prosecutorial decisions under a prosecutorial vindictiveness theory, a defendant must "advanc[e] objective evidence tending to show the existence of prosecutorial misconduct," a standard the Fourth Circuit has described as "rigorous." *Id.* at 315-16.

Mr. Remarque has offered no objective evidence of misconduct here – he relies instead on unsupported assertions about the Government's motivations. *See, e.g.*, ECF 135 at 3 (alleging without evidence that the prosecution "engaged in deceptive tactics" in an attempt to coerce a guilty plea); ECF 150 at 3 (alleging without evidentiary support that "the Government . . . continuously attempted to induce a guilty plea" in the time between the rejection of the plea deal and the filing of the Superseding Indictment). His assertions are incompatible with the timeline of events recounted above. The Superseding Indictment was filed in October of 2019, approximately eight months after Mr. Remarque filed his initial pretrial motions, and seven months after he rejected the Government's initial plea offer – a lengthy gap in time that undermines the notion that the Government suddenly decided to punish Mr. Remarque for rejecting the deal many months earlier. Indeed, the intervening period involved almost no substantive activity in the case, as a result of Mr. Remarque's repeated replacement of his attorneys. The only event remotely coinciding in time with the Superseding Indictment was Judge Xinis's issuance of the scheduling order, which provided Mr. Remarque an additional two months for the filing of pretrial motions, to be followed by another two months before a motions hearing would be held. ECF 46. There is no plausible reason why the Government would want to retaliate against Mr. Remarque for the issuance of a scheduling order, which is an entirely standard court practice.

The Second Superseding Indictment has an even more obvious prosecutorially legitimate rationale. On December 2, 2019, Mr. Montemarano filed a motion to dismiss count two of the Superseding Indictment, noting that the it contained two receipt counts alleging conduct occurring just minutes apart. ECF 64. In response, the Government filed the Second Superseding Indictment, amending or correcting the receipt charges to eliminate that potential infirmity. ECF 65. It is worth noting that the charges in the Second Superseding Indictment are no more severe than those in the Superseding Indictment – the identical counts simply charge conduct on different dates. That alteration certainly does not indicate increasingly vindictive behavior, even though Mr. Remarque's attorney had just filed six new pretrial motions. Equally compelling, Mr.

*USA v. Jean Buteau Remarque*
Criminal Case No. SAG-19-0039
October 16, 2020
**6** | P a g e

Remarque concedes that the Government re-offered him "the same initial deal" on January 16, 2020 that they had offered him, while the original one-count indictment was pending, in March, 2019. ECF 150 at 3. Thus, it is clear that the Government did not intend to "punish" Mr. Remarque by adding the receipt charges. Instead, the Government simply clarified the consequences of a decision not to plead guilty – Mr. Remarque would face three charges, with more serious penalties, instead of just one. The Government's conduct, then, falls squarely within the prosecutorial tactics adjudged constitutionally permissible in *Goodwin* and *Williams*.

Finally, Mr. Remarque's motion and his reply contain a series of arguments pertaining to the merits of the Government's case. ECF 135 at 7-10; ECF 150 at 5-8. The only possible relevance of those arguments to a theory of prosecutorial vindictiveness would require this Court to credit Mr. Remarque's proffered, and highly contested, version of the events: that his estranged spouse manufactured the "evidence" against him, and that the government agent participated in "doctoring" the charge. *Id.*; *see also* ECF 150 at 7 ("The Government apparently did not consider or attempted to conceal that Mrs. Wanna Nedgie Crevecoeur, Mr. Remarque's wife could have been fabricating her claim."). Mr. Remarque also alleges that the Government will be unable to prove the elements of the charged offenses. *Id.* Each of those theories will be tested at the upcoming jury trial of this case, but in the current procedural posture, without admissible evidence of any sort to support them, they do not create a presumption of vindictiveness in light of the facts and procedural history recounted above.

For the foregoing reasons, Mr. Remarque's motion to dismiss for prosecutorial vindictiveness, ECF 135, is DENIED. Despite the informal nature of this letter, it is an Order of the Court and will be docketed as such.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge