**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Criminal No. SAG-19-0039** |
| | * | |
| **JEAN BUTEAU REMARQUE,** | * | |
| | * | |
| **Defendant.** | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION**

Defendant Jean Buteau Remarque, who faces charges of receipt and possession of child pornography, has now filed a number of pending motions: a Motion to Quash the Indictment for Lack of Sufficiency, ECF 174, a Motion to Dismiss for Arbitrary Multiplication of Offenses, ECF 175, and a Motion to Dismiss for Bad Faith Prosecution and Abuse of the Grand Jury Process, ECF 176 (collectively "the Motions").[1]  The Government has opposed the Motions, ECF 177, and Mr. Remarque has replied, ECF 179, 180, 181.  Following a telephone conference in which the Court provided the parties with its initial views on the merits of the Motions, ECF 183, Mr. Remarque filed an Opposition to the Government's forthcoming third superseding indictment. ECF 184.  The Government also filed a Motion to Stay Ruling as to Count Three on Defendant's Motion to Quash.  ECF 187.  Upon review of those filings, for the reasons stated below, the Motion to Quash will be granted in part, although implementation of the ruling will be deferred to permit

---

[1] Several motions in limine, ECF 155, 159, 160, remain pending because this Court has deferred their adjudication.  One additional motion, seeking to obtain additional grand jury records, is not yet ripe, ECF 178.

the Government to supersede the indictment, and the Motions to Dismiss will be denied. The Government's Motion to Stay will also be denied.

## I.     Factual and Procedural Background

A review of this case's procedural history is central to several facets of the Court's analysis. Mr. Remarque's initial appearance in federal court, on a one-count indictment charging possession of child pornography, occurred on January 30, 2019. ECF 6. The Federal Public Defender's office entered its appearance on Mr. Remarque's behalf, ECF 14, and filed two suppression motions thirteen days later, on February 12, 2019. ECF 16, 17. The early months of the case were marked by several changes in attorney for Mr. Remarque, as well as his withdrawal from a plea agreement. ECF 19, 22, 27, 33, 36, 42. During that time, Mr. Remarque filed a motion for discovery. ECF 30. Judge Paula Xinis, the then-presiding judge in this case, held a telephone conference on September 25, 2019, and subsequently entered the case's initial pretrial scheduling order. ECF 46. The scheduling order set, inter alia, a December 2, 2019 deadline for Mr. Remarque to file or supplement pretrial motions, a motions hearing date of January 3, 2020, and a trial date of March 25, 2020. ECF 46.

During this entire period, while Mr. Remarque was repeatedly replacing his counsel, the motions filed on Mr. Remarque's behalf by the assistant Federal Public Defender remained pending. On or before the December 2, 2019 deadline, Mr. Remarque's then-counsel, Michael Montemarano, Esq., filed six additional pre-trial motions. ECF 56, 57, 59, 60, 61, 64. A motions hearing occurred on February 4, 2020, at which Judge Xinis denied Mr. Remarque's various pre-trial motions. ECF 74, 75.

On March 11, 2020, Chief Judge James K. Bredar issued the first of a long series of orders restricting access to Court facilities in light of the COVID-19 pandemic. *See* Standing Order No.

2020-02. During this time, Mr. Remarque once again sought to change his counsel. ECF 83. His previous counsel continued to work on his behalf, filing a motion seeking Mr. Remarque's release from custody for health and safety reasons, citing the pandemic. ECF 86. On June 11, 2020, Mr. Remarque's current counsel, Donald LaRoche, Esq., entered his appearance. ECF 102.

On July 18, 2020, Mr. LaRoche filed a motion to withdraw the motion in limine that had been filed by Mr. Montemarano. ECF 104. Judge Xinis entered a new scheduling order, which set a pre-trial conference for September 15, 2020 and a trial date for September 21, 2020. ECF 109. While the deadline for pretrial motions had long-since passed, Judge Xinis authorized Mr. LaRoche to file a renewed motion to suppress. ECF 112. On August 17, 2020, the case was reassigned from Judge Xinis to my docket. Extensive scheduling efforts ensued in hopes of safely proceeding ahead with Mr. Remarque's trial despite the pandemic, during which time Mr. Remarque filed numerous additional motions covering a wide range of topics. He sought reconsideration of the Court's previous denial of his request for pretrial release on bail, ECF 114, and filed a renewed motion to suppress, ECF 116. He then moved to dismiss Counts One and Two of the indictment on multiplicity grounds, ECF 121, sought review of his detention order, ECF 127, moved to dismiss on the grounds of prosecutorial vindictiveness, ECF 135, and moved to dismiss due to unnecessary delay, ECF 139. In the lead up to the then-target November 16, 2020 trial date, he moved to suppress several statements, ECF 151, and also filed several additional motions in limine, ECF 155, 159, 160. The trial was, unfortunately, again delayed multiple times until its currently scheduled date of March 1, 2021. ECF 173. Without seeking further leave of court, Mr. Remarque has continued to file motions. He filed a speedy trial motion in early December, ECF 169, before ultimately filing the instant motions in early January, ECF 174, 175, 176.

In light of the approaching trial date, upon review of Mr. Remarque's most recent motions, the Court scheduled a February 5, 2021 conference call to provide both parties with ample notice of its forthcoming rulings.  On the call, the Court stated that it would be issuing this written opinion in due course, but that it intended to deny the Motions, with the exception of the Motion to Quash, ECF 174, as it pertained to Count Three of the second superseding indictment.  It stated that it would give the Government the opportunity, if desired, to file a third superseding indictment in an attempt to remedy the defects the Court had identified in Count Three, *see* Section II(A) *infra*.  Mr. Remarque, meanwhile, was given the option of continuing the trial should he wish to do so in light of the Government's impending third superseding indictment.  This written opinion provides more detail regarding the basis for those oral rulings.

**II.    Analysis**

**A.  Motion to Quash for Lack of Sufficiency and Specificity**

"A valid indictment must: (1) allege the essential facts constituting the offense; (2) allege each element of the offense, so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense."  *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003).  Here, all three counts of the second superseding indictment track the language of the statutes charged.  Such tracking of statutory language is sufficient if the words "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal citation omitted); *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002).  However, "[w]hen the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming

under the general description, with which he is charged." *Brandon*, 298 F.3d at 310 (internal citations omitted).

Counts One and Two of the indictment, while not overly descriptive, satisfy these standards. Not only do the counts track the statutory language and thus expressly set out all the elements necessary to constitute the offense of receipt of child pornography, but they also include "essential facts" distinctive enough to allow preparation of the defense and to bar a second prosecution for the same offense—namely the inclusion of a precise date and time when the child pornography was allegedly received. For a charge centering on the receipt of images, such date and time details are sufficient to allow the defendant to identify what conduct and images the government are alleging violated the statute, particularly given that the dates and times align with the filenames of screenshots of the alleged child pornography found here.[2] While Mr. Remarque challenges the validity of the Government's "filenames-as-timestamps" theory, that question will be determined by the jury. For notice and double jeopardy purposes, the specific date and time sufficiently protect Mr. Remarque as to Counts One and Two.

Count Three, by contrast, supplements its recitation of the statutory language with only a date, providing no "essential facts" regarding what pornography was allegedly possessed, such that it is merely a generic reformulation of the elements rather than a sufficiently distinctive charge.

---

[2] Mr. Remarque alleges several other issues with the indictment, including its use of the word "any" and its alleged failure to outline how he allegedly affected interstate commerce with his receipt and possession of child pornography. ECF 174. To the extent Mr. Remarque objects to the language used in the indictment, it closely tracks the statutory language, such that there can be little doubt that it sufficiently and clearly alleges each element of the charged offenses. Mr. Remarque's arguments regarding the indictment's lack of highly specific details regarding interstate commerce and other matters, meanwhile, find no purchase in *Bolden* or other relevant precedent. The Government need not flesh out the entirety of its case at the indictment stage. *See, e.g.*, *United States v. Elbaz*, 332 F. Supp. 3d 960, 970 (D. Md. 2018) ("[A]n indictment must merely identify those essential facts necessary to inform her of the charge, prepare a defense, and avoid double jeopardy, not layout the whole of the Government's case.").

Nothing in the indictment protects Mr. Remarque from being charged for the same possession crime at some point in the future, because there is no information specifying the alleged child pornography being charged.   As such, the indictment is deficient, per *Bolden*, 325 F.3d at 490. The Government need not detail the evidence it intends to use to prove Mr. Remarque's guilt, nor is it cabined to any particular type of facts that must be included in order to satisfy the indictment's notice requirements, whether it be the inclusion of image file names, reference to particular devices on which the pornography was stored, or some other avenue entirely.   Whatever route the prosecution chooses, however, must involve sufficient inclusion of "essential facts" to allow Mr. Remarque to prepare a defense and to ensure that he cannot again be charged for possession of the same alleged pornography at a later date.   That concern is particularly acute where, as here, the date alleged in the indictment represents a search of a defendant's home, where multiple items are often seized and could potentially undergird the charge.

The question, then, is the appropriate remedy in this unique situation.   The Court has no concerns about actual notice to Mr. Remarque regarding the nature of the government's charges. Mr. Remarque's own filings demonstrate that he is aware of the items being alleged to contain child pornography.   *See, e.g.*, ECF 160 at 2 (referencing the flash drive with child pornography found in his living room).   Any double jeopardy concerns that might result from Count Three's language have not come to fruition, since there is no evidence that he has been charged with any other offenses.   Thus, as discussed during the February 5, 2021 conference call, this Court will afford the Government the opportunity to supersede the indictment to remedy Count Three's technical deficiencies, prior to dismissing that count as stated in the second superseding

indictment.[3]   While Mr. Remarque objects to allowing the Government to seek a superseding indictment and suggests dismissal with prejudice is the appropriate remedy instead, ECF 184, the very case law he cited in his Motion to Quash demonstrates that, in these circumstances, the Government is permitted to supersede.  *See, e.g.*, *United States v. Bryant-Royal*, No.WDQ-12-0040, 2013 WL 3364476, at *1 (D. Md. July 3, 2013) (noting that "the second superseding indictment repled and reinstituted the charge" that had been dismissed earlier for lack of sufficient specificity); *United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir. 1988) (stating that "[i]t is obvious that the government could easily have obtained a superseding indictment" to cure defects in the original indictment identified prior to trial).  *See also, e.g.*, *United States v. Schmidt*, No. 4:09CR00265 ERW, 2009 WL 2836460, at *8 (E.D. Mo. Aug. 27, 2009) (finding an indictment sufficient because it described the hard drive containing the child pornography and identified images of child pornography contained on the drive); *United States v. Brooks*, 648 F. App'x 791, 796 (11th Cir. 2016) (deeming a child pornography indictment sufficient because it alleged not just a date but also a name of the child pornography file in question).  The third superseding indictment will incorporate specific references to the alleged child pornography being charged, which has long been identified to Mr. Remarque in discovery.

---

[3] The Government filed a motion requesting that the Court defer consideration of Mr. Remarque's Motion to Quash regarding Count Three because it intends to seek the third superseding indictment.  ECF 187.  Thus, it argues that the issue raised by Mr. Remarque will be moot.  *Id.*  The Government is only seeking to supersede, however, because the Court indicated on the February 5, 2021 conference call that it intended to issue a written opinion finding Count Three deficient.  The conference call's purpose was to give the parties the maximum possible notice of the indictment's insufficiency (and the opportunity to supersede in particular), given the looming trial date in just a few weeks.  There are thus no mootness concerns, since the Court functionally already made its ruling regarding Count Three on the teleconference, and is using this opinion to formalize its reasoning.

This case is, admittedly, mere weeks away from trial.  Mr. Remarque has, however, been given the opportunity to seek a continuance, which he declined, ECF 188.  What is more, the offending Count Three language has been present in this indictment since the inception of this case in early 2019.  Mr. Remarque, despite roughly two-dozen rounds of motions challenging many different aspects of the indictment, his detention, and the prosecution's conduct, did not raise this issue until less than two months before trial, and more than a year after the December 2, 2019 deadline for filing pretrial motions, ECF 46.  The Court is sensitive to the fact that Mr. Remarque has experienced extensive pre-trial detention as a result of the pandemic and the resulting public health restrictions on jury trials.  Thus, this Court is not inclined to bar his belated motions on timeliness grounds.  That said, he should not benefit from his two-year delay in raising the issue of Count Three's sufficiency, to the prejudice of the government.  *See* Section I, *supra* (outlining the long history of this case).  The Government will be afforded the opportunity to supersede to correct the deficiency, just as it would have if the issue had been raised in a timely fashion.  *See United States v. Hillie*, 227 F. Supp. 3d 57, 82 (D.D.C. 2017) ("[T]his Court will hold in abeyance the order dismissing the federal counts for 14 days, which should give the government adequate time to determine whether a superseding federal indictment that contains constitutionally sufficient child pornography charges will be sought.").  The Government is permitted until February 18, 2021 to supersede Count Three.

### B.  Motion to Dismiss for Arbitrary Multiplication of Offenses

Mr. Remarque has made variations of this same argument regarding the multiplicitous nature of the indictment counts several times already, ECF 64, 121, and it has been rejected each time by the then-presiding judges, ECF 110, 148.  The Government has stated that the evidence it will present in support of the possession offense is distinct from the two images charged in the

receipt counts, ECF 177 at 7, and the forthcoming third superseding indictment will presumably clarify the details surrounding that position.   Receipt and possession of separate child pornography images and files constitute distinct conduct, and those charges therefore are not multiplicitous.  *See United States v. Fall*, 955 F.3d 363, 373 (4th Cir. 2020), *United States v. Schnittker*, 807 F.3d 77, 83 (4th Cir. 2015).  There is no debate that Mr. Remarque cannot be punished twice for the same offense, and he will not be sentenced for receipt and possession of the same child pornography images.  Thus, even if the Government did ultimately rely on the same child pornography images and files to prove possession and receipt, the Court would remedy the situation at trial or before sentencing to ensure that Mr. Remarque's rights are protected.  As an example, should Mr. Remarque ultimately be found guilty of both receipt and possession, the Court could sentence him only on the counts for which distinct evidence was provided without inputting any multiplicitous counts into the guidelines calculations.  While the Court understands that Mr. Remarque will argue that the screenshot filenames provided by the Government do not adequately evidence two distinct acts of receipt of child pornography, that is a factual issue to be presented to the jury, not a question to be adjudicated by the Court prior to trial.  Thus, while Court will continue to monitor the case for multiplicity and will take appropriate action if any is discovered, Mr. Remarque's motion to dismiss the indictment on that ground will be denied.

### C. Motion to Dismiss for Bad Faith Prosecution and Abuse of the Grand Jury Process

As evidence of bad faith prosecution, Mr. Remarque cites 1) the Government's decision to arrest him at his home instead of arranging for self-surrender, 2) the insufficient specificity of the indictment, 3) the "unsubstantiated and frivolous accusations that Mr. Remarque engaged in questionable conduct with a minor female in Haiti" which he claims is a lie fed to prosecutors by

his estranged ex-wife Ms. Wanna Crevecoeur, and 4) his claim that he "continues to lack any information with which to investigate or defend himself against these accusations."   ECF 176.

Regarding the Government's arresting Mr. Remarque at his home, he cites no authority for the proposition that such arrests (which are routine practice) constitute misconduct or bad faith. Instead, that decision is permissible and within the Government's discretion.  *See, e.g.*, *United States v. Khimani*, No. 1:14-CR-00455-PGG, 2015 WL 13876771, at *6 (S.D.N.Y. Apr. 27, 2015) (rejecting defendant's argument that the government's failure to give him the opportunity to turn himself in constituted misconduct).   His concerns about the sufficiency of the indictment, meanwhile, have been addressed in Section II(A).  His assertion that the prosecution is relying on evidence manufactured by Ms. Crevecoeur is another point of factual dispute that he may present as part of his defense to the jury, but does not amount to evidence of prosecutorial misconduct. Lastly, Mr. Remarque's apparent confusion as to what information to investigate or how to defend himself does not demonstrate prosecutorial misconduct, either.  The Government has produced to Mr. Remarque and his counsel, among other evidence, images of child pornography found on a device found in his living room, a recording of his custodial interrogation, and statements made by Ms. Crevecoeur.  *See* ECF 160 at 2 (referencing Mr. Remarque's receipt of the thumb drive found in his living room); ECF 69 (stating that "audio recordings of . . . [the] interviews of the Defendant . . . have previously been provided to defense counsel in discovery"); ECF 151 (discussing at length statements made by Ms. Crevecoeur and relied upon by the Government).  That evidence, along with the remaining discovery materials handed over by the prosecution, will constitute the Government's case and provides the sort of information Mr. Remarque can use to build his defense.  Indeed, as noted in this opinion, many of the arguments Mr. Remarque makes in these Motions are precisely the sorts of defenses one might properly raise

before a jury.  The Court is well aware that Mr. Remarque sees the facts in a very different way from the Government and will present the jury with a very different version of events: one in which Ms. Crevecoeur, the aggrieved ex-spouse, essentially "set up" the evidence to inculpate Mr. Remarque.  But there is no "bad faith" inherent in two different parties presenting two competing versions of events—indeed, that is precisely the nature of the American legal system.  It would be highly inappropriate for this Court to weigh the parties' divergent views of the facts in the context of a motion to dismiss the indictment.

Mr. Remarque also alleges abuse of the grand jury process.  Claims to this end must clear an extremely high legal standard.  In *Bank of Nova Scotia v. United States*, the Supreme Court held that "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."  487 U.S. 250, 254 (1988).  Against this backdrop, "challenges to the reliability of evidence presented to the grand jury are particularly disfavored." Fourth Circuit Criminal Handbook 2018 Edition, § 81 (Matthew Bender).  Indeed, the Fourth Circuit has held in no uncertain terms that "[w]e will not hear a challenge to the reliability or competence of the evidence presented to the grand jury, and the mere fact that evidence is unreliable is not sufficient to require a dismissal of the indictment."  61 F.3d 248, 252 (4th Cir. 1995), citing *Bank of Nova Scotia*, 487 U.S. at 261.

That sort of challenge is precisely what Mr. Remarque mounts here—questioning Special Agent Christine Carlson's expertise and alleging that she improperly "assumed and speculated" in her testimony regarding screenshot naming conventions and how those screenshots established that Mr. Remarque received child pornography on multiple different occasions.[4]  ECF 176 at 6-9.

---

[4] At several points in his filings, Mr. Remarque accurately highlights the fact that "time" is not a material element of the crimes charged.  *E.g.*, ECF 180 at 4.  He thus asserts the Government's heavy reliance on the screenshot filenames as timestamps in the indictment and grand jury

Mr. Remarque provides no actual evidence of wrongdoing or fraud upon the grand jury, focusing instead on his view that the Government's theory centered on screenshot filenames is unrealistic and untenable. Once again, the parties' divergent views about whether the Government has provided sufficient evidence of independent incidents of possession or receipt of child pornography is a question to be determined by the jury, not by this Court in a pre-trial motion. Disagreement with the Government's legal theory is not equivalent to prejudicial error. Accordingly, Defendant's motion to dismiss and his request that the Government be directed "to produce and disclose the entire transcript of the grand jury proceedings," ECF 179, will be denied, in light of the dearth of evidence suggesting error and the case law suggesting that even if error had occurred, it would not warrant dismissal.[5]

### III.   Conclusion

For the reasons stated above, Mr. Remarque's Motion to Quash the Indictment for Lack of Sufficiency, ECF 174, will be granted as to Count Three and denied as to the other two Counts, although the Court will hold in abeyance its order on that motion to give the Government until February 18, 2021 to supersede the indictment. His Motion to Dismiss for Arbitrary Multiplication of Offenses, ECF 175, and Motion to Dismiss for Bad Faith Prosecution and Abuse of the Grand Jury Process, ECF 176, will be denied. The Government's Motion to Stay Ruling as to Count Three on Defendant's Motion to Quash, ECF 187, will be denied as well. The Government will

---

proceedings "border[s] on ridiculous." *Id.* That contention overlooks the fact that the Government's theory is that the date and time stamps prove that Mr. Remarque received and/or possessed these images at separate times. While the Government does not have to prove the date or the time, it does need to prove separate instances of receipt/possession and can argue to the jury that the date and time stamps suffice.

[5] Mr. Remarque has filed a separate motion seeking the Government's instructions to the Grand Jury. ECF 178. That motion is not yet ripe and is not addressed herein, although the Court notes that the same rationale articulated here is likely to govern its assessment of that motion.

be permitted until February 18, 2021 to supersede the indictment to remedy the deficiencies identified in Count Three.

Dated:      February 12, 2021                    _____/s/_____
                                                 Stephanie A. Gallagher
                                                 United States District Judge