UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND (GREENBELT)
============================== :

UNITED STATES OF AMERICA,     :
                                    :

            Plaintiff,       :
                                      :

      — *versus* —       :     8:19-cr-00039-SAG-1
                                        :

JEAN REMARQUE,              :
                                      :

            Defendant.     :
============================== :

 

**MOTION FOR VACATUR OF JUDGMENT
RULE 33(a)**

Law Office of Bernard V. Kleinman, PLLC
108 Village Square
Suite 313
Somers, NY 10589-2305
Tel. 914.644.660
Fax 914.694.1647
Email: attrnylwyr@yahoo.com
Attorney for Defendant Jean Remarque

## **TABLE OF CONTENTS**

INADMISSIBILITY OF ELECTRONIC STORED
     INFORMATION IN VIOLATION OF THE
     AUTHENTICATION RULE FED. R. EVID. 901 ...................................................1

DOUBLE JEOPARDY ....................................................................................................11

VIOLATION OF RULE 16 ..............................................................................................24

CONCLUSION ................................................................................................................35

CERTIFICATE OF SERVICE .........................................................................................36

## POINT I[1]

### INADMISSIBILITY OF ELECTRONIC STORED INFORMATION IN VIOLATION OF THE AUTHENTICATION RULE FED. R. EVID. 901

A.    BACKGROUND INFORMATION

In the case at bar, the government concedes as much. The same set of images—the Picaso folder images stored on the 2TB Toshiba external hard drive "thumb drive" (bearing the serial number 159ATMD5T18B) — are at issue with respect to the receiving and possessing counts at trial. In support of count I and count II, the prosecution introduced as evidence two naked printouts, which were not accompanied with any authenticating sworn affidavits as required by FRE 901.

One of the printouts entitled "screenshsot_2017-11-22-14-29-55.jpg" contains what appears to be an incomplete or truncated Uniform Resource Locator known as "URL" providing insufficient proof of any website where the original digital image or images in question appear. Using this truncated and unauthenticated printout as only proof, the jury was requested to return a guilty verdict for both counts I and II, based on a wholly speculative conclusion that, the incomplete URL is proof that the screen shots were captured from an "Internet site," thereby transported in and affecting interstate commerce. Importantly, the incomplete URL was a recent fabrication disclosed to the defense only the second day of trial during the presentation of prosecution's case-in-chief in violation of the discovery rule.

In addition, to the receipt of child pornography counts, at least one additional unauthenticated screen shot entitled 133.png was introduced into evidence among the three visuals depictions supporting Count Three, possession of child pornography. The picture file type (.png) of the screen shot images is standard for screen shots across all makes of mobile devices. See Uni.

---

[1] Attorney LaRoche, on April 12, 2021, filed a Motion for an extension of time to file a Rule 33 Motion.  See ECF No. 246.  The Court never ruled on this request, hence, the motion is submitted herewith.

Accounting Serv., LCC v. Ethan Schulton, Case No. 3:18-cv-1486-SI (D. Or. 2019) (the .png file is standard for a screen shot). Id. at 10.

Indeed, the bottom line is that the screen shots cannot be authenticated and their contents therefore cannot be reliably determined to fairly and accurately portray what the Homeland Security Agent Special Agent Christine Carlson claims the screen shots to show because their origin is unknown. Def's Mot. in Limine #155. Thus, their admission at trial had confused and misled the jury, unduly prejudice Mr. Remarque and infringed the Fed. R. Evid. 901, as well as well-established law in the U.S. District of Maryland. See Hon. Paul W. Grimm, Authentication of Social Media Evidence, 36 Am. J. Trial Advoc. 433 [2013]; see also Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 537 (D. Md. 2007) (a thorough and eloquent analysis on how a screen shot purportedly taken from a website must be authenticated).

It is undisputed that the screen shots introduced into evidence are Electronically Stored Information, and they are not self-authenticating documents under Federal Rule of Evidence 902, therefore, their authentication prior any admission was necessary." In order for a piece of evidence to be of probative value, there must be proof that it is what its proponent says it is. "The requirement of authentication is thus a condition precedent to admitting evidence." United States v. Sliker, 751 F.2d 477, 497 (2d Cir. 1984). The government might have to complete this process for all, of the distinct printouts contained in the 2TB Toshiba external hard drive before they could be admissible into evidence to prove their case.

In its opposition response to the Defendant's Motion to Appeal Order for Detention ECF 51, the prosecution proffered for the first time, nine months after Mr. Remarque's original indictment that: "Some of the files of child pornography saved in the 2TB Toshiba external hard drive were 'screen shots' of images of child pornography on a cell phone (based on the file names) with creation dates ranging from September 11, 2017 through February 17, 2018 (likely signifying the dates that

2

screen shots were taken by the [Defendant] with his [cell phone] of images of child pornography [he] access on the [internet] on his [cell phone]. A [web address] is visible in the screen shot[s]" (emphasis added). However, the entire record is silent about the alleged website or the website address, this evidence was never disclosed to the defense until the second day of trial in violation of Fed. R. Crim. P. (16) and Brady.

Prior to trial, pursuant to Fed. R. Evid. 901, the Defendant moved in Limine to exclude any still screen shots that the prosecution intended to offer in support of count One and count Two (receipt of child pornography charges) because the prosecution would be unable to authenticate it, and because of the result of a potential discovery violation. See ECF 155 Motion in Limine to Exclude Evidence in Support of Counts I and II. Nevertheless, the defendant's motion was taken under advisement by the trial court then suddenly was denied a few days prior to trial, without holding a voir dire or ordered the government to respond to the Defendant's motion.

Indeed, the trial court denied the motion without any oral argument by counsel. The judge concluded that the government is permitted to introduce the challenged screen shots into evidence without the necessary authentication required by Fed. R. Evid. 901, and over the Defendant's objections. Before ruling on the Defendant's Motion in Limine, the district court should have conducted a voir dire. Although it is common to rely on the representations of counsel in considering motions in limine, here the government did not oppose or respond to the Defendant's Motion in Limine to Exclude the unauthenticated printouts, and the issue could not be resolved without an evidentiary presentation.

Of course, none of this happened here. Accordingly, the admission of the challenged screen shots at trial, over the Defendant's objections, was a plain reversible error of law. This error prejudiced Mr. Remarque because multiplicitous counts also afford the government an unfair

advantage by increasing the likelihood that the jury would have convicted on at least one count, if only as the result of a compromise verdict.

        B.        DISCUSSION

The prosecutor represented that the screen shots were captured from the Internet, no pretrial disclosure of any web site(s) had been ensured, let alone, evidence that Mr. Remarque had ever accessed and downloaded the challenged screen shots. Given this discrepancy, and the fact that no tangible and forensic evidence linked Mr. Remarque to the crime; the Defendant should have been permitted to look into this matter further. There was no way to decide whether the evidence was admissible without a hearing. See United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994) (stating that documentary evidence must be authentic and that authenticity is a condition precedent to admissibility). Therefore, the district court committed a reversible error of law or abuse of discretion by admitting the documentary exhibit at trial without proper authentication in violation of Fed. R. Evid. 901.

During her testimony at trial, HSI Special Agent Christine Carlson identified the printouts as being from a "website" because one of them contains an incomplete URL. She noted to the jury that the printouts are purported to be screen captured images of a website by [a] "cell phone." Importantly for the government's case is SA Carlson's unprecedented "file name screen shot theory," SA Carlson next pointed out that the file name assigned to each printout, is indicative of the date and time the child pornography was allegedly "received" by the [Defendant].

On cross-examination, SA Carlson admitted that the file name could be subjected to modification and alteration with great ease, that she has no information and familiarity with the website in question, does know whether the data had been corrupted, and has no evidence showing that Mr. Remarque ever visited a similar website containing the URL in question or any known child pornography websites. SA Carlson was correct insofar that Electronically Stored Information

4

could be easily subjected to machinations. In United States v. Storm, Case No. 3:11-cr-373-SI (D. Or. 2017). The U.S. government argued and the court sustained that "Dates and times on digital files are unreliable by nature and metadata cannot be used to determine on which device a file was created or how a file has been edited." Id. at 16.

C.      THE AUTHENTICATION RULE

The logic starting point for consideration of the Defendant's claim is Fed. R. Evid. 901(a). The rule reminds us that documentary exhibits must be authentic and that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). In reviewing a violation of the authentication rule, the preliminary decision regarding authentication is committed to the trial court - as opposed to the jury. See United States v. Silker, 751 F.2d 477, 499 (2d Cir. 1984). "A district court abuses its discretion when it bases its ruling on an erroneous view of the law or on clearly erroneous assessment of the evidence, and renders a decision that cannot be located withing the range of permissible decision." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013).

The requirement of authentication is ... a condition precedent to admitting evidence." Silker, 751 F.2d at 497; see also United States v. Maldonado-Rivera, 922 F.2d 934, 957 (2d Cir. 1990) ("In general, a document may not be admitted into evidence unless it is shown to be genuine."). Rule 901 "does not definitively establish the nature or quantum of proof that is required" preliminarily to authenticate an item of evidence. Id. at 499. "The type and quantum of evidence" required is "related to the purpose for which the evidence is offered," id. at 488, and depends upon a context-specific determination whether the proof advanced is sufficient to support a finding that the item in question is what its proponent claims it to be.

5

Unsurprisingly, one of the first cases to thoroughly address the traditional rules of evidence as applied to electronically stored information came from the U.S. District Court of Maryland (Greenbelt). In Lorraine v. Markel American Insurance Company, Judge Paul W. Grimm of this Court undertook a detailed, eloquent, and thorough and, now, widely accepted and cited analysis of the authentication rule in the context of a dispute over admissibility of electronically stored information ("ESI"). Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 563 (D. Md. 2007), under the Federal Rules of Evidence, summarized and applied to Mr. Remarque's situation follows this court stated: "To authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient." Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 563 (D. Md. 2007). The Lorraine case has been identified as "one of the earliest and most comprehensive case addressing the evidentiary hurdles of admitting [electronically stored information]. Therefore, the district court adjudication is contrary to clearly accepted law which it has itself established.

In the case at bar, the prosecution elicited testimony from the HSI Special Agent that purportedly identified the screen shots as "visual depiction of child pornography screen captured of an 'internet site' by a cellphone" based on a wholly speculative theory that amount to inadmissible hearsay." Applying the authentication rule of electronically stored information established by this Court in Mr. Remarque's case, the prosecution failed to make a prima facie case of authentication under Fed. R. Evid. 901 - the government has not offered evidence sufficient to support a finding that the [screen shots] are screen captured images of an existing child pornography [internet site] taken by a [cell phone]. Neither the cell phone nor proof about the purported "website" have been introduced into evidence and the government's witnesses attempting to authenticate the printouts

had no personal knowledge of the existence of the web site, let alone record of who maintained the website.

SA Carlson had offered no testimonial or tangible evidence of whether the printouts describe what she personally observed from the "internet site" on or about November 16, 2017, at approximately 2:50 p.m. and November 22, 2017, at approximately 2:29 p.m. The record is silent on whether any IP assigned to Mr. Remarque's residence was associated with the "internet site" or any unlawful conduct. The testimony elicited from SA Carlson would have been helpful to the government's case only - if it can prove that the digital images of child pornography were present on a webpage on these identified date and time, and it is uncontroverted that forensic examination revealed the Defendant's cellphones contain evidence that he had accessed the website in question, and downloaded its content. There is no evidence that the Defendant himself had created the printouts or had received the original images from any source.

As result, SA Carlson's testimony does not permit a reasonable and fair conclusion that "the screen shots were created by the Defendant, by screen capturing an Internet site using his cell phone." See United States v. Bansal, 663 F.3d 634, 667-68 (Fed. Cir. 2011) (concluding that testimony of a witness with personal knowledge was sufficient to authenticate screen shot images of a website); Wady v. Provident Life and Accident Ins. Co. of America, 216 F. Supp. 2d 1060, 1064 (C. D. Cal. 2002) (sustaining objection to affidavit of a witness attempting to authenticate documents from a website because the affiant had no personal knowledge of who maintained the website). As result, the printouts forming the basis of Count One and Count Two of the operative indictment were plainly inadmissible.

>D.      SOME EXAMPLES FROM A MYRIAD OF SISTER CIRCUITS ILLUSTRATE THE POINT.

United States v, Vayner, 769 F.3d 125, 131 (2d Cir. 2014) (overturning admission of webpage when the government was unable to present testimony of anyone with knowledge as to who in fact created the webpage); United States v. Jackson, 208 F.3d 125, 131 (7th Cir. 2000) (affirming exclusion of website postings where there was no evidence presented as to who created the postings); Browne, 834 F.3d at 408-15 (rejecting as self-authenticating Facebook chat logs when relevance turned on authorship, but referring to testimony from participants in the chats as to their contents as aiding in authentication); United States v. White, 660 Fed. Appx. 779, 783 (11th Cir. 2016) (holding e-mails to have been properly authenticated when a witness with knowledge testified that they accurately represented an e-mail exchange between himself and the defendant); United States v. Barnes, 803 F.3d 209, 217 (5th Cir. 2015) (accepting admission of Facebook messages when a witness testified that she saw the defendant using Facebook, recognized his account and his style of communicating reflected in the messages the government sought to introduce); United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007) (finding properly authenticated e-mails and communications testified that they were accurate records of the conversations); United States v. Needham, 852 F.3d 830, 836 (8th Cir. 2017) (admitting archived screen shot from website that was disabled after commencement of investigation for CP, based on testimony of federal agent who had viewed the website before it was disabled and confirmed that the screen shot was the same as the formerly public website content); see also United States v. Hassan, 742 F.3d 104, 112 (4th Cir. 2014) (screen shot of Facebook pages sufficiently authenticated by tracking Facebook pages and Facebook accounts to individuals mail and email addresses through IP addresses.

Here, without authentication, the screen shots are inadmissible hearsay inadequate to support a conviction beyond reasonable doubt. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Indeed, several courts have held that printouts of third-party websites are inherently non-trustworthy without authentication. See St. Luke's

8

Cataract & Laser Inst., P.A. v. Sanderson, 8:06 CV223TMSS, 2006 WL1320242, *2 (M. D. Fla. May 12, 2006) ("Web-sites are not self-authenticating."); In re Homestore.com Inc., 347 F. Supp. 2d 769, 782 (C. D. Cal. 2004) ("Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed. R. Evid. 902."); St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F. Supp. 2d 773, 775 (S. D. Tex. 1999) ("Anyone can put anything on the internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation.").

Mr. Remarque's case has been a travesty of justice; the trial court could not permit the prosecution to secure conviction based on inadmissible evidence, hearsay, and wholly speculative and unreliable theory. At the time of the trial on this matter, the law was clearly established about the authentication for admission of electronically stored information. It is not enough for the prosecution to say that the printout was obtained from a particular website that it failed to adduce as evidence. The government's purported "internet" evidence, then, is insufficient to support a jury verdict as to count One and count Two, receipt of child pornography because the evidence has not been authenticated. Malloy v. United States, 246 A.2d 781 (D.C. 1968) (A conviction cannot rest on mere possibilities. "Inferential proof of an ultimate fact may not be based upon mere possibility, speculation or conjecture). Even if the alleged screen shots were authenticated, the prosecution has not presented evidence at trial that would establish a violation of 18 U.S.C.S. 2252A(a)(2). The information and inference drawn from those screen shots constitute inadmissible hearsay, but since the screen shots were not properly authenticated, it is unnecessary for the defense to elaborate on the hearsay question at this time.

E. CONCLUSION

This complete lack of evidence about the origin of the screen shots meant that the government did not prove the charged offense of receipt of child pornography in and affecting

9

interstate commerce, which are two distinct elements of the *corpus delecti*. Because the government did not establish two *corpus delecti*, the prosecutor could not fairly argue that Mr. Remarque received the digital images in or affecting interstate commerce. By saying that "On November 16, 2017 and November 22, 2017, Remarque knowingly received child pornography by downloading the child pornography images to his cellphone using a means or facility of interstate commerce, that is, the internet," the prosecutor asserted something as fact that had not been proved, and that was clearly improper. By going outside the evidence, the prosecutor "violated a fundamental rule, know to every lawyer, that argument is limited to the facts in evidence." United States v. Wilson, 135 F.3d 291 (4th Cir. 1998) (United States ex rel. Shaw v, De Robertis, 755 F.2d 1279, 1281 (7th Cir. 1985). Of course, a prosecutor may argue that the evidence gives rise to an inference, but the suggested inference must be reasonably drawn from facts in evidence. See United States v. Brainard, 690 F.2d 1117, 1122 (4th Cir. 1982) Here, no cellphone, no website, no proof of internet access and downloading have been introduced into evidence. Thus, there was no basis from direct fact or reasonable inference for receipt of child pornography by downloading digital images from internet argument.

Admitting those evidence in such circumstances without proper authentication required by Fed. R. of Evid. 901, was a prejudicial error, refusal to correct this preserved error by dismissing at least counts One and Count Two, and enter a Judgment of Acquittal, would result in a miscarriage of justice. Accordingly, this court must dismiss any charges based on the introduction of the inadmissible screen shots or in the alternative order a new trial, in which the government will be precluded from introducing any unauthenticated electronically stored information.

**POINT II**

**DOUBLE JEOPARDY**

I.      LEGAL STANDARD

The Double Jeopardy Clause protects persons from being "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. One aspect of this protection prohibits the government from subjecting a person to "multiple punishments for the same offense." United States v. Schnittker, 807 F.3d 77 (4th Cir. 2015), quoting Ohio v. Johnson, 467 U.S. 493, 498 (1984); Missouri v. Hunter, 459 U.S. 359, 366-67 (1983). This prohibition attaches if the subject offenses "are in law and in fact the same offense." United States v. Crew, 538 F.2d 575, 577 (4th Cir. 1976); see also Blockburger v. United States, 284 U.S. 299, 304 (1932). The Blockburger test is implicated only "where the same act or transaction constitutes a violation of two distinct statutory provisions." 284 U.S. at 304. The government bears the burden of establishing multiple counts by charging and proving separate receipts of child pornography. United States v. Buchanan, 845 F.3d 282 (5th Cir. 2007); United States v. Planck, 493 F.3d 501, 504-05 (5th Cir. 2007).

Under the Federal Rules of Criminal Procedure, it is improper to try a defendant on multiple counts charging the same offense. Rule 7(c)(1) permits the government to "allege in a single count that the . . . defendant committed [an offense] by one or more specified means." As the Advisory Committee Note explains, this provision "is intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." 4 F.R.D. 405, 412 (1945) (emphasis supplied); see e.g., United States v. Allied Chemical Corp., 420 F. Supp. 122, 123-24 (E. D. Va. 1976). If a defendant raises a timely multiplicity objection pursuant to Fed. R. Crim. P. 12 (b) (2), the proper remedy is to require the government to elect between the multiplicitous counts. See United States v. Bradsby, 628 F.2d 901, 905 (5th Cir. 1980); United States v. Harwell, [9]426 F. Supp. 2d 1189, 192 (D. Kan. 2006); United States v. Fisk, 255 F. Supp.

11

2d 694, 702 (E.D. Mich. 2003). To avoid unfair prejudice to the defendant, the government must elect between multiplicitous counts before trial. This is so because multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981).

Courts have uniformly stated that in the context of child pornography, a defendant may convicted both of receipt of one image and possession of another image, or for receipt of an image on a hard drive and possession of [the same image] on a compact disc, but not for receipt and possession of the same image[s] on [the same device]. United States v. Johnston, 789 F.3d 934 (9th Cir. 2015) (citing United States v. Schales, 546 F.3d 965, 979 (9th Cir. 2008) (emphasis added). The cases are legion in this regard starting with the Fourth Circuit. Therefore, sentencing a defendant on possession and receipt of the same "material" that contains digital images of child pornography and for the same conduct violates the Double Jeopardy Clause. See, e.g., United States v. Brown, 701 F.3d 120, 127 (4th Cir. 2012) (stating without explanation that a defendant convicted of both receipt and possession of child pornography "has been convicted of multiplicitous offenses") United States v. Davenport, 519 F.3d 940,946-47 (9th Cir. 2008) (stating "proof of receiving child pornography under § 2252A(a)(2) necessarily includes proof of illegal possession of child pornography under § 2252A(a)(5)(B), and Congress did not intend to impose multiplicitous punishment for these offenses"); United States v. Manning, 738 F.3d 937, 946 (8th Cir. 2014) (concluding that proof of receiving child pornography necessarily includes proof of possession of child pornography); Ball v. United States, 470 U.S. 856, 864 (1985) (stating "that a convicted felon may be prosecuted simultaneously for [two overlapping offenses—receipt and possession of a weapon], however, is not to say that he may be convicted and punished for two offenses"); United States v. Palouizzi, 564 F.3d 142, 159 (2d Cir. 2012) (same); United States v. Muhlenbruch, 634 F.3d 987, 1003 (8th Cir. 2003); Schnittker, 807 F.3d 77 (noting that "our sister circuits appear to

12

agree that possession of child pornography is a lesser-included offense of receipt of child pornography" but declining to reach the question because separate conduct supported the defendant's convictions, the receipt count was supported by the Maxtor hard drive and the possession count was supported by the Western Digital hard drive) Id. at 80; United States v. Fall, 955 F.3d 363 (4th Cir, 2020) (noting "that possession of child pornography is a lesser-included offense of receipt of child pornography," but declining to reach the question under the plain error review because the defendant did not raise his multiplicity argument by pretrial motion). All the above cases holding that possession of child pornography is a lesser-included offense of receipt. But, the opposite is not necessarily true, however. United States v. Watzman, 486 F.3d 1004, 1009-10 (7th Cir. 2007) (stating "all receivers are possessors but not all possessors are receivers"); United States v. Miller, 527 F.3d 54, 63-64 (3d Cir. 2008) (stating "while a person who "knowingly receives" child pornography will necessarily "knowingly possess" child pornography, the obverse is not the case.").

While the government is not prohibited from charging a defendant with both a greater and lesser offense, the jury must be instructed that they cannot convict him for both offenses based on the same facts. United States v. Huether, 673 F.3d 789, 798-99 (8th Cir. 2012) (holding that failure to properly instruct the jury in this regard is plain error); United States v. Dixon, 507 F.2d 683, 684 (8th Cir. 1974). The jury "must be tasked with separating the evidence in considering the counts separately, and instructed that they may not convict [the defendant] of both counts based on overlapping evidence." Huether, 673 F.3d at 798 (noting that "[s]uch an instruction should not be hidden from the jury"). An error in so instructing the jury can be remedied by vacating one of the convictions. Id.

When a defendant is convicted of both an offense and a lesser-included offense, and Double Jeopardy concerns are at issue, district courts have the discretion to choose which count of

conviction to vacate. See Ball, 470 U.S. at 866 (the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions). See United States v. Luskin, 926 F.2d 372, 378 (4th Cir. 1991). "The better practice [when a defendant is convicted of a greater and lesser-included offense] would be for the trial judge to strike the conviction on the lesser included offense." United States v. Schales, 546 F.3d 965, 977-81 (9th Cir. 2008)). This is so even "where a defendant's conduct violated two statutes and the prosecutor decided the case warranted the more severe charge." United States v. Hector, 577 F.3d 1099, 1103-04 (9th Cir. 2009) (stating "neither [the defendant] nor the government has the right to determine which charge will stand"). The issue in a challenge to convictions for both receipt and possession is whether the convictions are based on the same facts. Manning, 738 F.3d at 946; see United States v. Huether, 673 F.3d 789, 798 (8th Cir. 2012); Ball, 470 U.S. at 864 (while the Government may seek a multiple-count indictment against a felon for violations [two statutes] involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment).

Accordingly, "the choice of which count to vacate is fundamentally a sentencing decision" and a district court should use the sentencing factors set out in 18 U.S.C 3553(a) as guidance. United States v. Maier, 646 Fed Appx 1148 (9th Cir. 2011). Absent unusual circumstances and compelling reasons to vacate the greater offense, a district court "should" exercise its discretion to vacate the lesser-included offense. United States v. Maier, 646 F.3d 1148, 1154 (9th Cir. 2011) ("Such a rule safeguards against cases where a defendant charged with both possession and receipt/distribution of child pornography pleads guilty to both offenses with the hope that he will be sentenced under the lesser crime.").

"A district court evaluating a case like [the defendant's] must choose whether the defendant's transgressions warrant a lesser penalty—a shorter statutory term of imprisonment for

possession of child pornography—or a greater penalty—a longer statutory term for receipt/distribution." Id.; see also United States v. Peel, 595 F.3d 763, 768 (7th Cir. 2010) (the decision as to which conviction to vacate "is a matter committed to the trial judge's discretion because functionally it is a decision concerning the length of the defendant's sentence"); United States v. Chambers, 944 F.2d 1253, 1269 (6th Cir. 1991) (where "anomaly" in sentencing guidelines produced a longer sentence on a duplicative lesser included offense than on the greater offense, "we think it is a decision for the trial court" which to vacate). Under Federal law, the prosecutor's unilateral authority to obtain a dismissal of some counts ends (absent permission of the defendant and the court) at the start of trial. See Hector, 577 F.3d at 1101-1103 (because defendant did not consent to dismissal of duplicative conviction, judge had discretion following trial to determine which convictions to vacate).

Generally, consistency of a jury's verdicts is not necessary. United States v. Finch, 16 F.3d 228, 230 (8th Cir. 1994); see United States v. Ford, 726 F.3d 1028, 1033 (8th Cir. 2013). A criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. United States v. Powell, 469 U.S. 57, 62-67 (1984); Finch, 16 F.3d at 230. A perceived inconsistency is not enough to vacate a conviction as long as there is sufficient evidence to support that conviction. Powell, 469 U.S. at 67.

## II.    ARGUMENT

a) Simultaneous Prosecution/Rule of Lenity/Allowable Unit of Prosecution

In the instant case, one set of visual depictions found in a single storage medium have been arbitrarily tri-furcated in three distinct counts in a single prosecution. In other words, the government split the single prohibited act of possessing a thumb drive containing child pornography into three separate offenses. Thus, counts I, II, and III represent a single unit of prosecution because

15

the variously alleged images were simultaneously possessed on the single 2TB Toshiba external hard drive. Thus, two counts must be dismissed under the concept of simultaneous prosecution pursuant to the rule of lenity. See United States v. Sturm, 560 F.Supp. 2d 1034 (D. Colo. 2008) (citing Valentine, 706 F.2d 282, 293 (10th Cir. 1983) ("when the intent of Congress as to the unit of prosecution cannot be clearly discerned, doubt must be resolved in favor of lenity"); see also U.S. v. Jones, 841 F.2d 1022, 1023 (10th Cir. 1988) (applying the rule to receipt and possession of ransom money convictions); See also United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) ("The signal danger in multiplicitous indictment is the defendant may be given multiple sentences for the same offense ....[If] the defendant has suffered multiple convictions and faces multiple sentences, the appropriate remedy is to vacate all of them but one.").

By analogy, the circumstance in the instant case is identical with United States v. Buczkowski, No. 09-4938 (4th Cir. 2011). Buczkowski took his laptop to be repaired. While repairing the laptop, the technician found CP on the computer and called police. Twenty-seven images qualified as CP were found on the computer, all of which had been loaded onto the computer on January 4, 2007, when defendant was in Iraq. Buczkowski was indicted on and convicted of twenty-seven counts of transportation of CP (one for each image) and one count of possession of CP. On appeal, the Fourth Circuit applied the rule of "allowable unit of prosecution" under the statute and the Supreme Court decision in Bell v. United States, 349 U.S. 81, 81 (1955). Buczkowski did not raise his multiplicity before the district court, thus, under the plain-error review, the Court held that because Buczkowski, like the defendant in Bell, transported multiple items through a single act of transportation, the defendant's conduct amounted to a single violation of the statute. Because it would affect the fairness of judicial proceedings to allow multiple convictions and sentences to be imposed for a single offense, the Court exercise its discretion to correct the error by vacating twenty-six convictions and sentences (including special assessments).

16

This case is unusual in that only the filename of two randomly selected screen shots was used as the only proof to charge the Defendant of receipt of child pornography based on a set of "images" simultaneously possessed on a single thumb drive which has no internet capability. The government does not cite any authority that addresses a situation where only the filename of screen shots constitute proof of a violation of 2252A(a)(2). Due to the absence of court precedent and clear Congressional intent as to the unit of prosecution, the rule of lenity necessarily leads to the conclusion that the charging of receipt and possession of the same material in three distinct counts in this case results in simultaneous prosecution.

b) The Jury Verdict Pose Double Jeopardy Problems

Mr. Remarque was charged of knowingly receiving and possessing child pornography in violation of 18 U.S.C 2252A(a)(2)(A), (a)(5)(B). These statutes prohibit the (1) knowing (2) receipt or possession of a material that contained child pornography (3) using any means in or affecting interstate or foreign commerce, including by a computer. 2252A(a)(2(A), (a)(5)(B).

In the case at bar, with respect to distinguishing the various pornography charges, there is no dispute that, in light of Lynn, Mr. Remarque could not be convicted and sentenced for both receiving child pornography and possessing child pornography for identical images. United States v. Lynn, 636 F.3d 1127, 1137 (9th Cir. 2011) The government concedes as much. The same images—the picaso folder images found on the 2TB Toshiba external hard drive "thumb drive" (bearing the serial number 159ATMD5T18B) — are at issue with respect to both the receiving and possessing counts at trial; where a single act of possessing the Toshiba external drive on July 17, 2018, establishes the entirety of the offense conduct. Ball v. United States, 470 U.S. 856, 865 (1985).

Mr. Remarque is prejudiced because as charged the indictment falsely suggest the jury that [Mr. Remarque] has "committed" not one but several crimes. See United States v. Johnson, 130

17

F.3d 1420, 1426 (10th Cir. 1997). The court, therefore, must dismiss or vacate two of the three counts in that case. See, e.g., United States v. Brown, 701 F.3d 120, 127 (4th Cir. 2012).

This is the only child pornography case that has interpreted 18 U.S.C.S 2252A, to accept the position that filenames, not listed in the indictment, of two unauthenticated screenshots found among a set of digital images in a single medium device, standing alone, constitute proof of distinct offenses under both 18 U.S.C. 2252A(a)(2) and 18 U.S.C.2252A(a)(5)(B), and the different dates alleged in the indictment as the only demarcation for each count. Other than this case, there does not appear to be any legislative or case support for the government's position, and indeed it may be difficult to justify the probative value of the filenames of two screenshots characterized as a "timestamps," when date is not an essential element of the offenses charged.

The district court in its ruling denying the Defendant's pretrial Motion to Dismiss on Double Jeopardy ground or to compel the government to elect between multiplicitous counts held that "The Government has stated that the evidence it will present in support of the possession offense is distinct from the two images charges in the receipt counts, ECF 177 at 7, and the forthcoming third superseding indictment will presumably clarify the details surrounding that position. Receipt and possession of separate child pornography images and files constitute distinct conduct, and those charges therefore are not multiplicitous." See ECF at 8-9. However, if we lay aside the trial court's misconstruction of the indictment and confine ourselves to its language and the evidence introduced at trial, it is obvious that the words of the indictment indicate a clear double jeopardy issue and the court finding was erroneous. The indictment at issue does not charge Mr. Remarque of possession and receipt of a clearly identified "files" or "digital images" listed by name, this indictment failed to even allege in what form the child pornography were allegedly received and possessed.

Instead, the indictment ambiguously charged Mr. Remarque of possession of any "material" that contained an image of child pornography and receipt of any "material" that contained child

pornography. The evidence adduced at trial revealed that all the charges against Mr. Remarque are stemming from the same evidence i.e., the "material" that contained child pornography" alleged in three separate counts is essentially the same Toshiba external hard drive "thumb driver" bearing the serial number 159ATMD5T18B, that contained a set of digitally stored visual depictions including what appear to be screenshots. Thus, double jeopardy is implicated here. See Ball v. United States, 470 U.S. 856, 864 (1985) (stating "that a convicted felon may be prosecuted simultaneously for [two overlapping offenses—receipt and possession of a weapon]). See Dudeck, 657 F.3d at 430.

In United States v. Ehle, 640 F.3d 689, 698 (6th Cir. 2011), the Sixth Circuit held that conviction for both receipt and possession of the same child pornography obtained via the internet was a double jeopardy violation. The Court qualified this holding in Dudeck, determining that while possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses." Dudeck, 657 F.3d at 430. For both receipt and possession convictions to stand, the indictment must contain the conduct necessary to sustain the two separate offenses. See id. at 431; see also United States v. Bobb, 577 F.3d 1366, 1374-75 (11th Cir. 2009) (noting that defendant was charged with receiving seven videos and several pictures files on November 12, 2004, but separately charged with possessing more than 6,000 additional picture files in August 2005); United States v. Overting, 573 F.3d 679, 697 (9th Cir. 2011) (noting that defendant's receipt charge was based on images downloaded from the internet, but possession was predicated on images taken of his minor stepdaughter).

c) Lynn as a Controlling and Persuasive Authority

Mr. Remarque's case is indistinguishable with Lynn. In Lynn (a widely accepted decision), defendant had downloaded child pornography videos and images from the Internet through a peer-to-peer file sharing program called Lime wire. Lynn was indicted for receipt or distribution of child

pornography in violation of 2252(a)(2) and possession of child pornography in violation of 2252(a)(4)(B), 636 F.3d at 1127. On appeal Lynn contented that his convictions for receipt and possession of child pornography, were based on essentially the same evidence, and therefore violated the Double jeopardy, the Ninth Circuit relying upon United States v. Schales, where the Court had found a double jeopardy violation and had concluded that possession of child pornography under 22(a)(4)(B) is a lesser-included offense of receipt of child pornography under 2252(a)(2). Just as in Mr. Remarque's case, in Lynn the government argued that the case was distinguishable from Schales and its progeny because the possession count alleged conduct that was factually distinct from the conduct alleged in the receipt count. There, as here, the government pointed to two factors to demonstrate that it had charged and proved separate conduct for each offense: (1) the dates the indictment alleges the acts took place were different and (2) defendant took actions to move the depictions from one file folder to another file folder all on the same computer's hard drive.

The Ninth Circuit held that the allegation of different dates of commission for each offense, by itself, was insufficient to create separate conduct. The Lynn Court further stated that for the charges to be separate, the government had to prove distinct conduct underlying each charge. The Court went on to analyze whether the transfer by defendant of digital image or video files from one folder to another on his laptop's hard drive constituted separate conduct so as to avoid double jeopardy. Ultimately the Court found that movement between folders cannot reasonably be viewed as placing images onto a different medium so as to possess them separately since the files remained on the hard drive of the laptop at all times in the same digital format.

The same inference applies here. The actions to move or store the visual depictions from three subfolders entitled "New folder", "New folder (2)", and "picaso1", within a folder entitled "picaso", stored in a 2TB Toshiba USB external hard, is far from constituting evidence of three

distinct conduct underlying each charge prohibited by Congress under 18 U.S.C.S. 2252. Such an extreme interpretation of Congressional intent undermines the reliability and credibility of the government's case against Mr. Remarque. See Buchanan, 485 F.3d at 365 footnote 36 (citing United States v. Reedy, 304 F.3d 365 (5th Cir. 1991)) (take, hypothetically, 1 website with 100 CP pictures. If each of 100 subscribers were to download each of the 100 pictures just once, the defendant could be charged with 10,000 counts, with a potential sentence of 150,000 years. Such an extreme interpretation of Congressional intent undermines the reliability and credibility of the government's case on appeal).

III.   The Indictment's Allegations of Different Dates is Insufficient to Carve Out Separate Conduct

In the case at bar, the overlapping dates cited in the Third Superseding Indictment and introduced as evidence at trial based on a wholly speculative "filename screenshot theory" do not protect the Defendant against double jeopardy. Contrary to the Government's contention, these overlapping "precise dates" have no credible and valid foundation; they are no more than admissible hearsay. Indeed, the government's "screenshots" introduced as evidence at trial does not come close to meeting the requirements for authentication under Fed. R. Evid. 901, and fails to provide an adequate basis to accept them. See M-Edge Accessories LLC v. Amazon. Com, MJG-11-3332 (D. Md. 2015) (unauthenticated printout of a third-party website is inadmissible hearsay). Even if the government had properly authenticated the screenshots, whether the information drawn from those "screenshots" constitutes inadmissible hearsay remains. They did not neither save the indictment nor help the government prove its case at trial.

The Government cites no cases, and the defense knows of none, in which only different overlapping dates alleged in each count of a receipts and possession of child pornography indictment, by itself, is sufficient to provide adequate notice to a defendant. Instead, a myriad of

courts throughout the nation squarely held that allegations of different dates, for receiving and possessing child pornography charges in a multiple-count indictment, are not alone sufficient to protect a defendant against double jeopardy. United States v. Gray, Case No. 15-3187 (6th Cir. 2016) (We have never held that alleging different dates for receiving and possessing child pornography charges in an indictment is alone sufficient to constitute separate conduct); United States v. Lynn, 636 F.3d 1127, 1137 (9th Cir. 2011) (The allegations of different dates of commission of each offense, by itself, is insufficient to carve out separate conduct). United States v. Schales, 546 F.3d 979-80 (9th Cir. 2008) (Merely citing different dates or dates ranges for the receipt and possession charges alone does not suffice to separate the conduct for double jeopardy purposes). United States v. Dudeck, No. 09-3231 (6th Cir. 2011) (We remanded to the district court to determine if there was separate conduct for the receiving and possessing charges, and listed different dates, different images, and different media as relevant consideration. We vacated a plea-based conviction and remanded for development of a factual record.). United States v. Woener, 709 F.3d 540 (5th Cir. 2013) ("Woerner argues that the two possession counts are predicated on the same conduct the government's response - that counts One and Two are not multiplicitous because Woerner possessed child pornography on different days - overlooks that the pertinent unit of prosecution is each material, not each day). See also United States v. Ehle, 640 F.3d 689, 697 (6th Cir. 2011) ("Carried to its logical extreme, the idea would permit possession of contraband for ten days (240 hours) to be charged as ten (or maybe 240) separate counts of possession. The policy underlying the Double Jeopardy Clause clearly does not permit such parsing). United States v. Buchanan, 485 F.3d 274, 278, 282 (5th Cir. 2007) (Finding separate counts of receipt of child protection multiplicitous and prohibited by Double Jeopardy because the indictment failed to allege separate receipt of the four images identified. The date and time stamps on the copied files were not necessarily the actual times that the images were automatically downloaded to Buchanan's

22

temporary internet folder due to the machinations of some computer programs. Schales, 546 F.3d at 980 ("If the government wishes to charge the defendant with both receipt and possession of material involving the sexual exploitation of minors based on separate conduct, it must distinctly set forth each medium forming the basis of the separate counts.").

Thus, the law is well-settled; the indictment must allege different conduct by setting forth different mediums, different images, different dates, different mode of transportation, and, different transactions as relevant considerations. In Schnittker, the Fourth Circuit applied the same reasoning. Schnittker Court reasoned that, no multiplicity problem arose from convicting a defendant of possessing images found on a Western Digital external hard drive and receiving videos found on a Maxtor external hard drive, even when those same videos appeared on both hard drives. 807 F.3d at 83. Thus, the relevant consideration is the medium device supporting each Count and the form in which the child pornography was received or possessed, not the allegation of specific dates because "time" is not an element of the offenses charged.

Also in Fall, under plain error review, the Fourth Circuit refused to find an unpreserved double jeopardy claim, where the indictment unambiguously alleged that the receipt charge was based on three distinct images present in space allocated to temporary internet files on the roof laptop, the possession is supported by images stored on the roof laptop and hard drive, and the transportation is supported by images retried from the defendant's dropbox account. 955 F.3d at 373-74.

Thus, Mr. Remarque's indictment could have been valid without mentioning any specific dates. See Tincher v. Boles, 364 F.2d 497, 498 (4th Cir. 1966) (an indictment is not defective though it contains no allegation of the time of the offense, unless time is of the essence of it). Here, the indictment failed to allege separate receipts and possession of the five images introduced at trial. Nor did the expert or other testimonies at trial established that this specific [Defendant] took one

than more action other than being in possession of the 2TB Toshiba USB external hard drive on July 17, 2021. There was uncontroverted testimony that the "filename" construed by the HSI Special Agent as "timestamps" were not necessarily the actual times that the original images were received due to the fact that they could be manually modified or altered by a simple mouse click due to machinations of some computer programs.

IV.   Conclusion

This court has discretion to correct this clear and obvious error that affected Mr. Remarque's substantial rights because it seriously affects the fairness, integrity or public reputation of the judicial proceedings. Accordingly, the court must the dismiss two of the three counts alleged in the indictment for violation of the double jeopardy clause of the Fifth Amendment of the Constitution and/or violation of the allowable unit of prosecution.

**POINT III**

**VIOLATION OF THE DISCLOSURE RULE**

Federal Rule of Criminal Procedure 16(a)(1)(E) provides, in pertinent part: "upon the defendant's request, the government must permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible object, buildings, or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

Rule 16 provides grounds for reversal if the "government's untimely disclosure of evidence" caused the defendant substantial prejudice. United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998) (per curiam) (internal quotation mark omitted). The decision to impose sanctions pursuant Rule 16(d)(2) lies within the sound discretion of the trial court. United States v. Young, 248 F.3d 260, 269 (4th Cir. 2001); see also United States v. Barile, 286 F.3d 749, 758 (4th Cir. 2002) ("Upon

24

finding a violation of Rule 16, the district court has discretion under Federal Rules of Criminal Procedure to determine the proper remedy."). In the exercise of its discretion relating to discovery violations, however, the court must consider "the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." United States v. Gonzales-Flores, 701 F.3d 112, 116 (4th Cir. 2012) (quoting United States v. Hastings, 126 f.3d 310, 317 (4th Cir. 1997); see also United States v. Muse, 83 F.3d 672, 675 (4th Cir. 1996) (finding that a trial court has discretion to fashion an appropriate remedy for a discovery violation).

One potential, yet severe, sanction for prosecutorial misconduct is for the court to fully dismiss the indictment. In order to dismiss an indictment for prosecutorial misconduct, a court must find that the defendants were prejudiced by the misconduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988) (A district court has "no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct."). Dismissal of an indictment may be warranted when egregious government conduct is so outrageous as to shock the conscience of the court." United States v. Dyess, 478 f.3d 224, 234 (4th Cir. 2007), internal citations omitted). A court may dismiss an indictment as a sanction for a prosecutor's failure to obey court orders or other violations of law pursuant to its supervisory power when the violation caused prejudice to the defendant or posed a substantial threat thereof. United States v. Goodson, 204 F.3d 508, 514 (4th Cir. 2000). However, dismissing the entire indictment is a drastic and severe sanction. United States v. Lee, 906 F.2d 117, 120 (4th Cir. 1990).

Here, the government first disclosed what appears to be an incomplete URL facially appearing on a screenshot introduced into evidence at trial in support of count One (receipt of child pornography). This evidence surfaced for the first time after the first day of trial, and after nearly

twenty-six months of Mr. Remarque's original indictment. Mr. Remarque's defense continuously and vigorously requested the government to disclose the discovery material pertaining to Mr. Remarque's case. The Defendant had filed a motion for a Bill of Particulars in which he requested the government to a fair and timely notice of how it intends to prove the jurisdictional element of both the receipt and possession charges. This disclosure was essential to prepare a defense because such essential element of both offenses was alleged only in generic terms in Counts One, Two, and Three of the operative indictment.

Instead, the government continuously resisted the multiple requests for discovery formulated by Mr. Remarque's different counsels. It is uncontroverted that the information about the URL was in the government's possession, custody and control from at least nine months after Mr. Remarque's initial indictment. Apparently, a thorough forensic examination of the materials seized at Mr. Remarque's marital home was performed nine months after his original indictment. The prosecution has provided no justification for its failure to produce this evidence before trial upon the Defendant's request. Thus, absent a valid justification, this court should infer that this omission was willful and motivated by a desire to obtain a tactical advantage. See generally United States v. Finley, 301 F.3d 1000, 1018 (9th Cir. 2002). Exclusion is an appropriate remedy for a discovery rule violation only where "the omission was willful and motivated by a desire to obtain a tactical advantage." Taylor v. Illinois, 484 U.S. 400, 415 (1988) (upholding trial court's exclusion of witness where defendant deliberately failed to identify witness prior to trial).

The incomplete URL does little to support the receipt of child pornography charges, but its introduction at trial, was nevertheless highly prejudicial in that this evidence tends to encourage the jury to find guilt from an improper reasoning, conjecture, improper inference, and inadmissible hearsay. The incomplete URL that appears on the unauthenticated screenshot constitutes no more than inadmissible hearsay, as it was an out-of-court statement offered into evidence for "the truth

of the matter asserted"- that the screenshot, in question, was screen captured images of a "website" (internet) taken by a cellphone. Fed. R. Evid. 801 (c) (2).

A.    Mr. Remarque Has Suffered Substantial Prejudice

This newest discovery violation prejudiced Mr. Remarque and adversely affected his trial strategy because: (1) he was prejudiced due to his inability to conduct forensic analysis in an attempt to discover the source or origin of the URL and the screenshot by examining its authenticity; (2) it was impossible for him to change trial strategy based on new evidentiary disclosures the second day of trial, as a result the defense team was unfairly surprised by the government, and was forced to deal with the newly disclosed evidence during trial rather than prepare for trial; (3) he lost a member of his trial team - the defense forensic expert was unprepared to present expert opinion based on uninvestigated and undisclosed discovery material, and the prosecutor was requesting nonexistent forensic report as condition to admit the defense forensic expert opinion at trial; (4) his defense counsel scramble to absorb this late-breaking discovery in this case; (5) the late appearance of the URL undoubtedly complicated Mr. Remarque's trial strategy; he had no confidence that there not more relevant discovery from the forensic examination and data collected in the course of the investigation, and the materials that have been disclosed indicate that any additional withheld discovery may prove to be exculpatory; (6) the late appearance of the URL had permitted the government to rely Mr. Remarque's unreliable and untrustworthy statements in a misleading manner to mislead.

In fact, the government's pattern of discovery violations had hampered Mr. Remarque's defense and undermined confidence in the outcome of his trial. Particularly speaking, there is none of the following in what the defense has been provided:

(1) police reports providing detail regarding the conduct of the search, the number of participants in the search warrant execution, their identity, their agency and the roles they played during the search execution;

(2) Formal return on the execution of the warrant to the issuing judge;

(3) complete continuous chain of custody documentation of the electronic devices seized from the time of its seizure at Mr. Remarque's residence until introduction at trial as it reflected in (a) HSI paper chain of custody; (b) HSI Electronic file system;

(4) Verification for each forensic examination conducted; administrative review and technical review for each examination conducted; examination report date;

(5) Reports providing detail about the custodial interrogation of Mr. Remarque regarding the timing of his presentment, per the terms of F.R.Cr.P 5;

(6) documentation of this actually having actually taken place; similar records and materials providing detail regarding the receipt, search and other forensic examination by law enforcement of electronic communication (WhatsApp conversation) and materials allegedly provided by Mr. Remarque's then-wife, Ms. Wanna Nedgie Crevecoeur or of the electronic devices presumably seized during the search;

(7) List of forensic examiners who had the evidence under their immediate control and possession; complete indicia of ownership and use of the electronic devices seized;

(8) record and data regarding cellular data history produced by mobile communications company (T-Mobile) of all individuals living at the Edmonston Road address from September 2017 to February 2018;

(9) Record of the apartment lease holder and a list of individuals who had access to it at the time the images were created;

(10) Data history of all the child pornography websites accessed from which the images were downloaded;

(11) Report from the National Center for Missing and Exploited Children of identified victims.

The bare bones nature of the materials provided to the defense do not remotely approach the government's obligations as set out per statute, rules and its own discovery agreement. Had the government timely disclosed this evidence the defense and its retained forensic expert would have had time to investigate the matter and craft a narrower objection and defense related to the lack of probative value and inadmissibility of this prejudicial evidence at trial. To require the Defendant to proceed to trial without having received and reviewed undisclosed discovery material necessary to his defense would be a miscarriage of justice. In this case, the government's discovery errors amounted to a pattern of misconduct as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the guilty verdict.

      B.      Dismissal of Count One and Two or Order a New Trial is the Appropriate Intermediate Sanction

Because the Defendant has suffered some prejudice as a result of the late disclosed evidence and that the prosecution was grossly negligent in complying with their discovery obligations, the only remaining question is whether sanctions the court should impose. The decision to impose a sanction lies within the sound discretion of the court. Young, 248 F.3d at 269. Between orders a new trial and full dismissal of the indictment is a dismissal of Counts One and Two of the Third Superseding Indictment. The undisclosed URL was used to prove the jurisdictional element as to Counts One and Two. This dismissal remedies the discovery violations as to the prejudice caused to Mr. Remarque, adequately sanctions the government for its pattern of discovery violations, and helps deter future misbehavior.

## POINT IV

## VIOLATION OF THE DISCLOSURE RULE

Federal Rule of Criminal Procedure 16(a)(1)(E) provides, in pertinent part: "upon the defendant's request, the government must permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible object, buildings, or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

Rule 16 provides grounds for reversal if the "government's untimely disclosure of evidence" caused the defendant substantial prejudice. United States v. Salameh, 152 F.3d 88, 130 (2d Cir. 1998) (per curiam) (internal quotation mark omitted). The decision to impose sanctions pursuant Rule 16(d)(2) lies within the sound discretion of the trial court. United States v. Young, 248 F.3d 260, 269 (4th Cir. 2001); see also United States v. Barile, 286 F.3d 749, 758 (4th Cir. 2002) ("Upon finding a violation of Rule 16, the district court has discretion under Federal Rules of Criminal Procedure to determine the proper remedy."). In the exercise of its discretion relating to discovery violations, however, the court must consider "the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." United States v. Gonzales-Flores, 701 F.3d 112, 116 (4th Cir. 2012) (quoting United States v. Hastings, 126 f.3d 310, 317 (4th Cir. 1997); see also United States v. Muse, 83 F.3d 672, 675 (4th Cir. 1996) (finding that a trial court has discretion to fashion an appropriate remedy for a discovery violation).

One potential, yet severe, sanction for prosecutorial misconduct is for the court to fully dismiss the indictment. In order to dismiss an indictment for prosecutorial misconduct, a court must

find that the defendants were prejudiced by the misconduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988) (A district court has "no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct."). Dismissal of an indictment may be warranted when egregious government conduct is so outrageous as to shock the conscience of the court." United States v. Dyess, 478 f.3d 224, 234 (4th Cir. 2007), internal citations omitted). A court may dismiss an indictment as a sanction for a prosecutor's failure to obey court orders or other violations of law pursuant to its supervisory power when the violation caused prejudice to the defendant or posed a substantial threat thereof. United States v. Goodson, 204 F.3d 508, 514 (4th Cir. 2000). However, dismissing the entire indictment is a drastic and severe sanction. United States v. Lee, 906 F.2d 117, 120 (4th Cir. 1990).

Here, the government first disclosed what appears to be an incomplete URL facially appearing on a screenshot introduced into evidence at trial in support of count One (receipt of child pornography). This evidence surfaced for the first time after the first day of trial, and after nearly twenty-six months of Mr. Remarque's original indictment. Mr. Remarque's defense continuously and vigorously requested the government to disclose the discovery material pertaining to Mr. Remarque's case. The Defendant had filed a motion for a Bill of Particulars in which he requested the government to a fair and timely notice of how it intends to prove the jurisdictional element of both the receipt and possession charges. This disclosure was essential to prepare a defense because such essential element of both offenses was alleged only in generic terms in Counts One, Two, and Three of the operative indictment.

Instead, the government continuously resisted the multiple requests for discovery formulated by Mr. Remarque's different counsels. It is uncontroverted that the information about the URL was in the government's possession, custody and control from at least nine months after Mr. Remarque's initial indictment. Apparently, a thorough forensic examination of the materials seized at Mr.

31

Remarque's marital home was performed nine months after his original indictment. The prosecution has provided no justification for its failure to produce this evidence before trial upon the Defendant's request. Thus, absent a valid justification, this court should infer that this omission was willful and motivated by a desire to obtain a tactical advantage. See generally United States v. Finley, 301 F.3d 1000, 1018 (9th Cir. 2002). Exclusion is an appropriate remedy for a discovery rule violation only where "the omission was willful and motivated by a desire to obtain a tactical advantage." Taylor v. Illinois, 484 U.S. 400, 415 (1988) (upholding trial court's exclusion of witness where defendant deliberately failed to identify witness prior to trial).

The incomplete URL does little to support the receipt of child pornography charges, but its introduction at trial, was nevertheless highly prejudicial in that this evidence tends to encourage the jury to find guilt from an improper reasoning, conjecture, improper inference, and inadmissible hearsay. The incomplete URL that appears on the unauthenticated screenshot constitutes no more than inadmissible hearsay, as it was an out-of-court statement offered into evidence for "the truth of the matter asserted"- that the screenshot, in question, was screen captured images of a "website" (internet) taken by a cellphone. Fed. R. Evid. 801 (c) (2).

C.      Mr. Remarque Has Suffered Substantial Prejudice

This newest discovery violation prejudiced Mr. Remarque and adversely affected his trial strategy because: (1) he was prejudiced due to his inability to conduct forensic analysis in an attempt to discover the source or origin of the URL and the screenshot by examining its authenticity; (2) it was impossible for him to change trial strategy based on new evidentiary disclosures the second day of trial, as a result the defense team was unfairly surprised by the government, and was forced to deal with the newly disclosed evidence during trial rather than prepare for trial; (3) he lost a member of his trial team - the defense forensic expert was unprepared to present expert opinion based on uninvestigated and undisclosed discovery material, and the prosecutor was requesting nonexistent

32

forensic report as condition to admit the defense forensic expert opinion at trial; (4) his defense counsel scramble to absorb this late-breaking discovery in this case; (5) the late appearance of the URL undoubtedly complicated Mr. Remarque's trial strategy; he had no confidence that there not more relevant discovery from the forensic examination and data collected in the course of the investigation, and the materials that have been disclosed indicate that any additional withheld discovery may prove to be exculpatory; (6) the late appearance of the URL had permitted the government to rely Mr. Remarque's unreliable and untrustworthy statements in a misleading manner to mislead.

In fact, the government's pattern of discovery violations had hampered Mr. Remarque's defense and undermined confidence in the outcome of his trial. Particularly speaking, there is none of the following in what the defense has been provided:

(1) police reports providing detail regarding the conduct of the search, the number of participants in the search warrant execution, their identity, their agency and the roles they played during the search execution;

(2) Formal return on the execution of the warrant to the issuing judge;

(3) complete continuous chain of custody documentation of the electronic devices seized from the time of its seizure at Mr. Remarque's residence until introduction at trial as it reflected in (a) HSI paper chain of custody; (b) HSI Electronic file system;

(4) Verification for each forensic examination conducted; administrative review and technical review for each examination conducted; examination report date;

(5) Reports providing detail about the custodial interrogation of Mr. Remarque regarding the timing of his presentment, per the terms of F.R.Cr.P 5;

(6) documentation of this actually having actually taken place; similar records and materials providing detail regarding the receipt, search and other forensic examination by law enforcement of

33

electronic communication (WhatsApp conversation) and materials allegedly provided by Mr. Remarque's then-wife, Ms. Wanna Nedgie Crevecoeur or of the electronic devices presumably seized during the search;

(7) List of forensic examiners who had the evidence under their immediate control and possession; complete indicia of ownership and use of the electronic devices seized;

(8) record and data regarding cellular data history produced by mobile communications company (T-Mobile) of all individuals living at the Edmonston Road address from September 2017 to February 2018;

(9) Record of the apartment lease holder and a list of individuals who had access to it at the time the images were created;

(10) Data history of all the child pornography websites accessed from which the images were downloaded;

(11) Report from the National Center for Missing and Exploited Children of identified victims.

The bare bones nature of the materials provided to the defense do not remotely approach the government's obligations as set out per statute, rules and its own discovery agreement. Had the government timely disclosed this evidence the defense and its retained forensic expert would have had time to investigate the matter and craft a narrower objection and defense related to the lack of probative value and inadmissibility of this prejudicial evidence at trial. To require the Defendant to proceed to trial without having received and reviewed undisclosed discovery material necessary to his defense would be a miscarriage of justice. In this case, the government's discovery errors amounted to a pattern of misconduct as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the guilty verdict.

34

D.       Dismissal of Count One and Two or Order a New Trial is the

Appropriate Intermediate Sanction

Because the Defendant has suffered some prejudice as a result of the late disclosed evidence

and that the prosecution was grossly negligent in complying with their discovery obligations, the

only remaining question is whether sanctions the court should impose. The decision to impose a

sanction lies within the sound discretion of the court. Young, 248 F.3d at 269. Between orders a

new trial and full dismissal of the indictment is a dismissal of Counts One and Two of the Third

Superseding Indictment. The undisclosed URL was used to prove the jurisdictional element as to

Counts One and Two. This dismissal remedies the discovery violations as to the prejudice caused

to Mr. Remarque, adequately sanctions the government for its pattern of discovery violations, and

helps deter future misbehavior.

## **CONCLUSION**

For the reasons set forth herein, the Court should vacate the conviction of the Defendant

Remarque.

Dated: July 9, 2021
       Somers, NY                                                          /s/ *Bernard V. Kleinman*
                                                       Bernard V. Kleinman

## **CERTIFICATE OF SERVICE**

I am Bernard V. Kleinman, an attorney duly admitted to practice law before the Bar

of this Court, and I do affirm that on the 9th of July, 2021, I did serve the within Rule 33(a) Motion,

on all parties to this action by efiling with the ECF filing of this Court.

Dated: July 9, 2021
      Somers, NY                                                  /s/ *Bernard V. Kleinman*
                                                      Bernard V. Kleinman

36